Johnnie **WOLGAMOT** et al., Appellants,

v.

Russell W. **CORLEY** et al., Appellees.

No. 5409.

Court of Civil Appeals of Texas, Waco.

May 15, 1975.

Rehearing Denied June 5, 1975.

Trickey & Trickey, Richard M. Trickey, Fort Worth, for appellants.

David B. Anderson, Cleburne, for appellees.

## OPINION

JAMES, Justice.

This is a trespass to try title suit by the record owners against claimants under the ten year statute of limitations, involving a five acre tract of land. The trial court entered judgment for the defendants (the limitation claimants) based upon a jury verdict, from which the record owners appeal. We reverse and render.

Plaintiff-Appellants Johnnie Wolgamot, et al are the heirs at law of E. R. York and wife Laura E. York, and are the record owners of the five acre tract in controversy. Defendant-Appellees Russell W. Corley and wife Theodocia Corley claimed the tract in question by ten years adverse possession.

E. R. York and wife Laura E. York (the common source of title herein) purchased as eighty acre rectangular tract out of the William B. Capps Survey in Johnson County, Texas, in 1912. The five acre

tract in controversy is a rectangular tract located in the southwest corner of the 80 acre tract. In 1919 the Yorks conveyed to one Earl K. Mahanay 75 acres of land, same being the above-mentioned 80 acres, specifically excepting the 5 acre tract in question. From Mahanay this same 75 acre tract passed through several conveyances until the year 1939, when D. E. Wallace became its owner. On August 5, 1946 D. E. Wallace and wife conveyed the west 40 acres of the 75 acre tract to their son-in-law and daughter, William A. Sharp and wife Sarah Sharp. In 1946, the Sharps went into possession of the 40 acre tract as well as the adjoining 5 acre tract in controversy, and made their home on the 40 acre tract. The five acre tract and the 40 acre tract were under one fence, and the Sharps kept and pastured eight to ten cows and calves on the 40 acres and the 5 acres all through the years from the time they purchased the 40 acres in 1946 until they sold their place to the Defendant-Appellee Theodocia Corley in 1967, as more particularly hereinafter described. Moreover, the five acre tract was used by the Sharps for ingress and egress to and from the public road. The gate was located at the southwest corner of the 5 acre tract, and the Sharps travelled across the 5 acres to get from their residence house (located on the 40 acres) to the public road.

On December 20, 1967, Defendant-Appellee Theodocia Corley purchased a tract consisting of 38.15 acres, same being the 40 acre Sharp tract therein above mentioned less a strip 150 feet wide off the west end and adjoining the 5 acre tract in controversy on the north. Mrs. Corley purchased this 38.15 acre tract by warranty deed from Mrs. Sarah Sharp (who was then a widow) and the heirs of William A. Sharp deceased. At the same time Mrs. Corley secured a quitclaim deed from Mrs. Sarah Sharp and the heirs of William A. Sharp to the five acre tract in question. Mrs. Corley also purchased a 35.6 acre tract

which adjoined the Sharp place on the east. After making these purchases on December 20, 1967, the Corleys went into possession of the purchased tracts and continued to pasture the 5 acre tract along with the Sharp tract, renovated the old Sharp residence, and continued to use the 5 acre tract for ingress and egress as had the Sharps before them. In 1968, the Corleys executed and filed a dedication deed which created a public roadway 60 feet wide which began at the southwest corner of the 5 acre tract and ran along the south boundary of the 5 acre tract and thence eastward along south boundary of the Sharp tract, and on into the 35.6 acre tract adjoining the Sharp tract on the east.

As stated above, Johnnie Wolgamot, et al, the heirs at law of E. R. York and wife Laura E. York, the record owners of the 5 acre tract, brought this suit against the Corleys for title and possession of the 5 acre tract. The Corleys set up the defense of title by ten years adverse possession, among other defenses.

Trial was to a jury, to whom the following special issue (along with appropriate definitions) was submitted by the trial court, which was the sole issue to be answered by the jury:

"Do you find from a preponderance of the evidence that for any period of ten consecutive years prior to October 15, 1973, and subsequent to the year 1946, the Defendants (the Corleys) and those under whom they claim title, had peaceable and adverse possession of the 5 acre tract of land described in Plaintiffs' petition, cultivating, using or enjoying the same? Answer 'Yes' or 'No'."

The jury answered "yes" to this issue. Based upon the jury's answer to this special issue, the trial court entered judgment that the Plaintiff-Appellants (the record owners) take nothing, and adjudged title and possession of the 5 acre tract to be in the Defendant-Appellees, the Corleys (the limitation claimants).

Plaintiff-Appellants appeal to this court on one point of error, to wit, that there is no evidence to support the jury's answer to the foregoing special issue. Counsel for Appellants was more specific in his brief and in oral argument before this court, and narrowed his "no evidence" contention by asserting that there is no evidence of any intention on the part of William A. Sharp and wife Sarah Sharp to claim the 5 acre tract adversely to the record owners. We sustain this contention, and reverse the trial court's judgment and render judgment for the Plaintiff-Appellants.

As stated before, the Sharps had possession of the 5 acre tract from 1946 until December 20, 1967, when the Corleys secured a quitclaim deed to the 5 acre tract from the widow Sarah Sharp and the heirs at law of William A. Sharp. Mrs. Sarah Sharp testified by way of answers to written interrogatories which had been propounded to her. Mrs. Sharp in effect was asked whether or not the possession of her and her husband from 1946 until December 20, 1967, of the 5 acre tract was "continuous, exclusive, and not interrupted by any claim or adverse suit." To this question she answered: "There was one time Mrs. York (Mrs. Laura E. York) came there and I would say it was approximately twenty-five years ago, and she knew they had it. It was there and so she come and she said that she decided they would just sell it so we knew it belonged to them—. So my husband he asked her how much she wanted for it and she said, 'I'll take two hundred dollars for it', so, he said we would take it and she went to get her papers fixed up to it and she come back then I would say in about two weeks and she says, 'Bill, I can't sell it at that price.' No taxes were paid on it and it would have cost her money to have sold it. She said to let it sit and some day it may sell for taxes and if it does you can buy it and that's the last we have heard anything from the York People in approximately twenty-five years."

Mrs. Sharp was asked whether the Sharps' possession of the 5 acre tract was for a period of ten years "commenced and continued under a claim of right to said land inconsistent with the claim of any other person." To this Mrs. Sharp answered: "We just lived there. Nobody claimed it and we didn't claim it either—in fact it was no man's land, that is what we called it." Mrs. Sharp further testified that she and her family never paid any taxes on the 5 acre tract, and that no member of her family to her knowledge ever told any member of the York family that they (the Sharps) were claiming ownership of the 5 acre tract. With reference to the tract in controversy, Mrs. Sharp further testified: "It was just there, and so, as far as claiming it, you don't claim anything that is not yours."

■ The above conversation between William A. Sharp and Sarah Sharp on the one hand, and Mrs. Laura E. York on the other hand took place "about twenty-five years ago." Since Mrs. Sharp's testimony was given on September 13, 1974, this means that this conversation took place in or about the year 1949, some three years after the Sharps went into possession of the 5 acre tract. The possession of the Sharps from 1946 until 1967 consisted of the following: (1) The 5 acre tract was fenced in together with the rest of the Sharp 40 acres, (2) The Sharps pastured from eight to ten head of cattle on the 40 acres and the 5 acres, and (3) The 5 acre tract was used by the Sharps as a means of ingress and egress from their residence (located on the 40 acre tract) to the public road. Insofar as the record shows, the nature of the asserted "adverse possession" of the Sharps did not change in any material way after the Sharps' conversation with Mrs. York as compared with before said conversation. In other words, the record shows no acts or conduct on the part of the Sharps after said conversation with Mrs. York which could be construed as a repudiation of the York title to said 5 acre

tract. Under this state of the record, we are constrained to hold that after the Sharps made the attempt to purchase the tract from Mrs. York in or about the year 1949, that limitations never began to run in favor of the Sharps as long as the Sharps possessed the 5 acre tract in question. The record shows affirmatively that the Sharps had no intention to claim possession adversely to the Yorks; and without this necessary element of intention on the part of the Sharps to claim adversely to the Yorks, the title of Defendant-Appellees as limitation claimants must necessarily fail. Since the Defendant-Appellees (the Corleys) had possession only from December 20, 1967, (when they secured the quitclaim deed to the 5 acres from the Sharps), the Corleys have not possessed the property themselves long enough to satisfy the ten year statute of limitations. Therefore the Corleys must of necessity rely upon adverse possession of the Sharps by way of tacking in order to muster ten years adverse possession. In view of our holding that the Sharps' possession was not adverse or hostile to the York title as shown by the undisputed evidence, the Corley limitation title will not meet the test for the ten year statute of limitations. Article 5510, Vernon's Ann.Texas Civil Statutes.

■ The possessor's acknowledgement of title in another when made *before* the completion of the bar, as here, will defeat limitation. Bruni v. Vidaurri (1942) 140 Tex. 138, 166 S.W.2d 81; McDonald v. Batson (Waco, Tex.Civ.App.1973) 501 S.W.2d 449, no writ history; Nagel v. Hopingardner (Houston 14th, Tex.Civ.App. 1971) 464 S.W.2d 472, no writ history. "Peaceable possession," even when accompanied with acts whose prima facie import is that of hostility may not, in truth, be adverse, for the intent of the possessor may bring his acts and conduct into consonance with recognition of the privileges of the true owner. Intent, then, is a controlling factor. Bruni v. Vidaurri, supra.

■ An offer to purchase (on the part of the possessor) from the record owner, when it involves an admission of title, as in the case at bar, is one method by which the title of another may be recognized, so as to defeat limitations. Houston Oil Co. of Texas v. Pullen (Tex.Com.App.1925) 272 S.W. 439, opinion approved by the Supreme Court; Mhoon v. Cain (1890) 77 Tex. 316, 14 S.W. 24; Johnson v. Martinez (Dallas, Tex.Civ.App.1929) 18 S.W.2d 925, writ dismissed.

■ Since the Sharps acknowledged the York title in the manner as hereinabove pointed out, in or about the year 1949, before they could possibly have matured limitation title, in order for them to start limitations to run in their favor thereafter it was necessary for them to have repudiated the York title. That is to say, it was necessary for the Sharps to make known to the Yorks that their possession, occupancy and use had ceased to be one of permission and had become hostile to them (the Yorks). See Allen v. Sharp (Fort Worth, Tex.Civ.App.1950) 233 S.W.2d 485, writ refused. It has been held that constructive notice of such repudiation of the record owner's title may be sufficient if the adverse occupancy is long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others. Under such circumstances the law will raise the inference of notice of repudiation to the true owner. Vasquez v. Meaders (1956) 156 Tex. 28, 291 S.W.2d 926.

In the case at bar, there is no evidence of any repudiation by the Sharps of the York title at any time, either actual or constructive, and consequently limitations never commenced to run in favor of the Sharps. Therefore since the Corleys have not possessed the property except from December 20, 1967, they have held the property less than ten years, and cannot mature limitations on the strength of their own possession.

Judgment of the trial court is accordingly reversed and rendered in favor of Plaintiff-Appellants Johnnie Wolgamot, et al, for title and possession of the land in controversy.

Reversed and rendered.