Moses BROWN, heir of Ed Jackson
and Grace Jackson, Appellant

v.

SNIDER INDUSTRIES, LLP, Appellee

No. 06-16-00078-CV

Court of Appeals of Texas,
Texarkana.

Date Submitted: March 7, 2017

Date Decided: May 17, 2017

Rehearing Denied June 20, 2017

Hobert T. Douglas, Jr., Attorney at Law, 5928 Maceo Lane, Fort Worth, TX 76112, Attorneys for appellant.

Dean A. Searle, Ronan S. Searle, Searle & Searle, PC, 305 W Rusk St, Marshall, TX 75671, Attorneys for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Moseley

Moses Brown, heir of Ed Jackson and Grace Jackson, brought a trespass to try title action against Snider Industries, LLP, in 2013, alleging himself to be one of the joint owners of an 8.151-acre tract in Harrison County, Texas. In its motion for summary judgment, Snider argued that because it had perfected title by adverse possession, Brown's claims were barred by limitations. The trial court granted Snider's motion, holding that Snider had perfected title to the realty in question by adverse possession and was entitled to immediate title and possession of it.

Brown has appealed the ruling, contending that the trial court erred in granting Snider's motion for summary judgment because Snider had failed to join indispensable parties and that Snider failed to conclusively prove the elements of adverse possession as a matter of law.

We affirm the trial court's judgment because Brown failed to preserve the issue of joinder and because Snider was entitled to summary judgment as a matter of law, Brown not having raised a disputed issue of material fact.

## I. Factual and Procedural Background

Moses Brown filed a trespass to try title action against Snider Industries, LLP, alleging that Snider had claimed an 8.151-acre tract of Harrison County property in which he owned an undivided interest. The 8.151-acre tract (the 8-acre tract) is the southernmost portion of a larger, rectangularly-shaped, 21.7535-acre tract (the 22-acre tract). The 8-acre tract is bounded on three sides (the west, east, and south) by Snider's property.

Brown alleged that in 1923, the 22-acre tract was acquired by Ed and Grace Jackson, both of whom died intestate. Brown alleged that Ed and Grace had ten children, including Ida Brown, his mother, who likewise died intestate. Due to the intestate demise of Ida Brown and other family members, Brown alleged that he, "with at least one other Heir," owned an undivided interest in the property at issue.

The petition alleged that Brown and his predecessors in interest had paid the taxes on the 22-acre tract through 2010, but Brown discovered that the Harrison Central Appraisal District had (at the request of Snider) changed the rendition on the tax rolls of the property. When doing so, it showed Snider—not the Jacksons—as the owner of the property.[1] Brown learned that the District's action was apparently done at Snider's request, based on a 1978 Affidavit of Use and Possession and a 1980 correction deed, in which Snider's predecessor in interest and use, Ronald Snider, claimed ownership of a 94.824-acre tract that included the 8-acre tract.

Brown alleges that his efforts to resolve the matter were unsuccessful, leading to the filing of the trespass to try title action on November 8, 2013.[2] Snider denied Brown's allegations and affirmatively pled

---

1. Snider alleged that it had paid taxes on the property at issue since at least 1997.

2. Brown's petition also included other claims, including trespass and a request for damages, and Snider's counterclaims included claims for an easement regarding a roadway (Old Road) north of the property at issue; however, all other claims and causes of action were either settled or severed from this case, and therefore, we do not address them. The trial court entered a final judgment based on the order granting Snider's motion for partial summary judgment regarding the 8-acre tract.

that Brown's claims were barred by limitations as Snider had perfected its ownership of the property by way of adverse possession through compliance with the requirements of both the ten-year or twenty-five-year statutory periods. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.026, 16.028 (West 2002). Snider subsequently filed a motion for summary judgment[3] on its claims of adverse possession. After Brown filed his response to that motion, the trial court found that Snider had affirmatively established its claim of adverse possession of the property for the statutory period and granted Snider's motion for summary judgment. The trial court did not specify the time period in which Snider had perfected its adverse possession claim(s). Brown's motion for new trial was overruled by operation of law.

## II. The Issue of Joinder Was Not Preserved

■ In his first point of error, Brown contends that the trial court "was on notice that there was at least one other heir whose interest in the. . . . Subject Property would be directly affected by the present lawsuit" and that the court erred in granting summary judgment because the trial court failed to join as parties "all heirs claiming an ownership interest" in the property.[4]

3. The motion was entitled a motion for partial summary judgment because, at the time of its filing, it would not have resulted in a final decision.

4. In his first point of error, Brown also argues, in the alternative, that the substance of this case is a partition action and the laws and rules governing partition suits required joinder in this case. However, by failing to raise this argument before the trial court, Brown failed to preserve it for our review on appeal. *See* TEX. R. APP. P. 33.1(a). Even if Brown had preserved this argument, Snider

The joinder of parties is governed by Rule 39(a) of the Texas Rules of Civil Procedure, which states, in pertinent part:

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

TEX. R. CIV. P. 39(a).

■ A motion to abate is the proper procedural tool used to raise an issue of a defect in the parties.[5] *Truong v. City of Houston*, 99 S.W.3d 204, 216 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Generally, the motion to abate would challenge the pleadings by alleging facts showing that the suit could not proceed without the joinder of other parties. *Id.*; *see Tex. Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488

did not seek a partition of the subject property from the larger 22-acre tract and none was required in order to grant the relief Snider requested. The record makes clear that Snider only sought, and the trial court only granted, superior title as to Brown's interest in the subject property.

5. A motion for joinder or other motion seeking to compel the addition of parties pursuant to Rule 39(a) of the Texas Rules of Civil Procedure is also sufficient. *See Longoria*, 255 S.W.3d at 178.

(Tex. 1967); *Martin v. Dosohs I Ltd.*, 2 S.W.3d 350, 354 (Tex. App.—San Antonio 1999, pet. denied). The motion to abate must (1) specify the impediment to the continuation of the case in its current posture, such as the absence of necessary parties; (2) propose an effective cure, such as joinder of those parties; and (3) ask the court to abate the suit until the defect is corrected. *See Martin*, 2 S.W.3d at 354 (citing *Jarrell*, 418 S.W.2d at 488). Although Rule 39 provides for joinder in mandatory terms, "there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision." *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974). Whether a person or entity is a necessary party is a discretionary decision for the trial court. *See Jones v. Smith*, 157 S.W.3d 517, 522 (Tex. App.—Texarkana 2005, pet. denied); *see also Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 389–90 (Tex. 1977). If the trial court determines the absent person or entity should be joined under Rule 39, then the court has a duty to effect the person's joinder. *See* Tex. R. Civ. P. 39(a); *Clear Lake City Water Auth.*, 549 S.W.2d at 390.

Brown argues that the trial court had a duty to effect the joinder of other parties in this case, citing *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174 (Tex. App.—Antonio 2008, pet. denied). However, in *Longoria*, motions were filed pursuant to Rule 39(a) of the Texas Rules of Civil Procedure "to compel joinder" of absent parties, whereas here, no such motion was filed. *Id.* Therefore, the facts of *Longoria*

are distinguishable from those of the present case.

Here, Brown failed to file a motion to abate or otherwise to argue at trial that indispensable parties should be joined. Brown cites no authority indicating that the trial court had a duty to join other parties *sua sponte* or (in the absence of a party's motion which complains about the lack of joinder) to abate, and we are aware of none.[6] Therefore, Brown failed to preserve this issue for our review. *See Truong*, 99 S.W.3d at 216.

## III. Snider Was Entitled to Summary Judgment on its Affirmative Defense of Limitations

In his second point of error, Brown contends that Snider was not entitled to summary judgment as to limitations because it failed to prove as a matter of law that it fulfilled the elements of adverse possession.

The grant of a trial court's summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are

---

**6.** Brown also contends that the trial court's failure to compel joinder amounted to fundamental error. However, the case he cites in support of his argument, *Petroleum Anchor Equipment, Inc. v. Tyra*, 406 S.W.2d 891 (Tex. 1966), is inapplicable because it was overruled in part by *Cooper v. Texas Gulf Indus-* *tries*, where the Supreme Court of Texas recognized that Rule 39 "initiated an entirely new method for resolving the question of joinder of parties" and "wholly replaced" the joinder analysis used in *Petroleum Anchor Equipment. Cooper*, 513 S.W.2d at 203.

meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

■ To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant is entitled to summary judgment if he conclusively negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *McGowen v. Huang*, 120 S.W.3d 452, 457 (Tex. App.—Texarkana 2003, pet. denied).

■ To prevail on its affirmative defense of limitations, Snider had to prove as a matter of law that it adversely possessed the property for either the ten-year or twenty-five-year period. The elements of adverse possession are "(1) actual possession of the disputed property, (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, and (6) consistent and continuous[ ] for the duration of the statutory period." *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213

(Tex. App.—Texarkana 2006, pet. denied) (citing *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 193–94 (Tex. 2003)).[7]

The following evidence is undisputed. In the 1978 Affidavit of Use and Possession, Ronald Snider, Snider's predecessor in interest, claimed title to a 94.824-acre tract that included the property at issue,[8] and asserted that he and his representatives had used the tract in his, and what later became Snider Industries' timber processing business and for ingress and egress. A correction deed to the same property was filed in 1980. In 1978, Snider built a twelve-inch, overhead pipeline across the property at issue that conveyed wood chips and wood particles from Snider's sawmill and timber processing plant to a nearby railroad spur. In Brown's November 2015 deposition, he admitted that: (1) Snider excavated and, thereafter, maintained a drainage ditch on the property, erected a fence, and constructed the elevated pipeline across the property; (2) for thirty-five years, since at least 1981, Snider's use of the property was continuous, uninterrupted, open, obvious, and without the owners' permission; (3) Snider used the pipeline from at least 1981 through 2012; (4) as of 1983, Brown, his mother, Ida Brown, and his family were aware that Snider was using the property without their consent; and (5) from 1983 through 2011, Brown had not spoken to or corresponded with anyone at Snider. The uncontroverted portions of Jason Monroe's affidavit state that

7. Also see the definition of adverse possession in Section 16.021(1) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002). There are dissimilarities between Sections 16.026 and 16.028 of the Texas Civil Practice and Remedies Code other than the period of time required to bring the claim to maturity, but those dissimilarities are not pertinent to the discussion here.

8. Brown disputes the 1978 affidavit's assertion that Snider had been using and occupying the property for more than a decade and therefore, we do not consider that assertion. While the affidavit does not specifically set out the metes and bounds description of the property at issue, the description of the 94-acre tract includes and encompasses the property at issue.

since he began working for Snider in 2002, Snider had used the property in its timber processing business and for ingress and egress, excavated a drainage trench on the property, maintained the property through brush removal, chemical sprays, and tree removal, built an "iron ore or shale roadway" across the property to the railroad spur, and had security guards patrol the property twice every day.

Here, Brown contests only whether Snider's use and possession of the property was exclusive, whether it was continuous for the statutory period, whether the limitations period was severed or interrupted, and whether Snider used and possessed the property under a claim of right. Therefore, we need not address the remaining adverse possession elements.

### A. Exclusive Use and Possession

 Brown argues that a 1985 easement raises a fact issue which "preclude[s] Snider from establishing exclusivity of use."

 In order to prove adverse possession, the claimant must wholly exclude the owner from the property. *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948); *Terrill v. Tuckness*, 985 S.W.2d 97, 107 (Tex. App.—San Antonio 1998, no pet.); *W. End API, Ltd. v. Rothpletz*, 732 S.W.2d 371, 375 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). "The character and situation of the land, and the uses to which it is adapted, and may be and is actually put, must be considered in determining whether an occupation is exclusive or not." *Richards v. Smith*, 67 Tex. 610, 4 S.W. 571, 573 (1887); *see Mason Bldg. Ass'n of Houston, Inc. v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Kazmir v. Benavides*, 288 S.W.3d 557, 564–65 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The 1985 easement document provides that in exchange for a monthly payment, Ida Brown (Moses Brown's mother and predecessor in interest), Arthur Jackson, and Annie Smith, the purported owners of "22 acres out of the J.A. Chaffin Headright Survey located near the north boundary of the City of Marshall" granted Loyd Oney "an easement and permit to haul sawdust, mill waste, and tree bark from Snyder [sic] Industries Mill across said 22 acres to other land owned by Snyder [sic] Industries upon which there is now a dump site." The easement does not include a description of the 22 acres or a description of the easement's location across the 22 acres. The easement is unrecorded and was not notarized. Brown contends that the easement is evidence that his predecessors in interest were "using and even profiting" from the subject property and that it, therefore, raises an issue of fact regarding the exclusivity of Snider's use and possession.

Considering the easement's description of the property's location, it is reasonable to infer that the 22 acres described in the easement is the larger 22-acre tract containing the property at issue. However, it would require speculation and the stacking of one inference upon another in order to infer that Oney actually acted in reliance on the grant of the easement, that he did so at a time and for a duration that intersected with Snider's use and possession, that he crossed the 22 acres by way of the southernmost eight acres at issue, and that he did so without Snider's permission. *See Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003) (per curiam) (inference stacked upon inference is no more than a scintilla). Therefore, even granting every reasonable inference in Brown's favor, the easement is insufficient to raise a question of material fact regarding the exclusivity of Snider's use and possession

of the property.[9] *See Llopa, Inc. v. Nagel,* 956 S.W.2d 82, 86 (Tex. App.—San Antonio 1997, writ denied).

### B. Statutory Period

 Brown also contends that Snider failed to sustain adverse possession for the ten-year statutory period because of the enclosed land exception under Section 16.031 of the Texas Civil Practice and Remedies Code (which exempts lands from adverse possession claims which are "entirely surrounded" by the claimant under many circumstances).

Under Section 16.026 of the Civil Practice and Remedies Code, "[a] person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code Ann. § 16.026. The limitations period commences on the date the adverse possessor actually and visibly appropriates the claimed land. *Waddy v. City of Houston,* 834 S.W.2d 97, 103 (Tex. App.—Houston [1st Dist.] 1992, writ denied). However, the enclosed land exception, Section 16.031 of the Civil Practice and Remedies Code, provides that

(a) A tract of land that is owned by one person and that is entirely surrounded by land owned, claimed, or fenced by another is not considered enclosed by a fence that encloses any part of the surrounding land.

(b) Possession of the interior tract by the owner or claimant of the surrounding land is not peaceable and adverse possession as described by Section 16.026 unless:

(1) the interior tract is separated from the surrounding land by a fence; or

(2) at least one-tenth of the interior tract is cultivated and used for agricultural purposes or is used for manufacturing purposes.

Tex. Civ. Prac. & Rem. Code Ann. § 16.031 (West 2002).

Brown contends that the subject property is an interior tract as described in the statute and, therefore, that Snider could not adversely possess the property under the ten-year period without proving subsections (b)(1) or (b)(2). However, Section 16.031 does not apply to the property in dispute, because the 8-acre tract at issue is not "entirely surrounded by land owned, claimed, or fenced by another" as required by the statute. Tex. Civ. Prac. & Rem. Code Ann. § 16.031(a). Brown's affidavit states that the property "is not surrounded, or separated, by a fence," and although Snider owns or claims the property to the tract's west, east, and south, Snider does not own or claim the property north of and abutting the 8-acre tract. Therefore, Section 16.031 does not apply to the exclusion of recovery under the ten-year statutory period.[10] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.031(a).

---

**9.** Brown also argues that a fact issue is raised by a 2007 Timber Deed from Ida Brown and him to Hines Timber Company. Because we find that Snider established its title by limitations under a ten-year period prior to 2007, we need not address the 2007 Timber Deed. *See Sterling v. Tarvin,* 456 S.W.2d 529, 533 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.) (ouster after the limitations period is too late).

**10.** Because we find that Snider established adverse possession as a matter of law under the ten-year-limitations period and that there is no issue of material fact, we need not address Brown's challenge to the twenty-five-year limitations period. *See Sterling,* 456 S.W.2d at 533 (ouster after the limitations period is too late).

## C. Interruption of the Limitations Period

██ Brown argues that all limitations periods were severed or interrupted in 1977 when Snider offered to swap land for the property at issue.

██ If, prior to the completion of the limitations period, an adverse possessor acknowledges that another has superior title to the property he is possessing, it will defeat limitations as to that possessor. *Wolgamot v. Corley*, 523 S.W.2d 491, 495 (Tex. Civ. App.—Waco 1975, writ ref'd n.r.e.) (citing *Bruni v. Vidaurri*, 140 Tex. 138, 166 S.W.2d 81, 87–88 (1942)). One of the methods by which the title of another may be recognized so as to defeat limitations is when the possessor's offer to purchase the property from the record owner involves an admission of title. *Id.* In order to start or restart the limitations period, the possessor must affirmatively repudiate the owner's title, making known to the owner that the possession and use of the property has become hostile. *Id.*

Attached to Brown's reply to Snider's motion for summary judgment was a letter dated November 29, 1977, from a John Goldman, on Snider Industries, Inc.[11] letterhead to Arthur Jackson, in which Goldman offers on behalf of Snider to trade thirteen acres for "approximately eight acres of the Ed Jackson Estate land adjacent to the Snider Industries sawmill complex." The letter included map sketches of the proposed property borders before and after the swap. From the sketch maps and the letter's description of the property, it is reasonable to infer that the property Snider was seeking to acquire was the tract at issue in this case. Brown contends that as of the letter's date, "any limitations

period was effectively severed" because by attempting to acquire the property, Snider acknowledged superior title to be vested in another.

Here, the undisputed evidence shows that in 1978, about a year after the 1977 letter, Snider's predecessor in interest, Ronald Snider, filed the Affidavit of Use and Possession, claiming long-term use of and superior title to the property, and a correction deed to the same property was filed in 1980. Further, Snider built a new pipeline across the property in 1978. The pipeline stands on steel beams which stand thirty to fifty feet tall. Brown admitted that Snider used that elevated pipeline for at least a period from 1981 through 2012. Should we concur with Brown that the 1977 letter is an acknowledgment by Snider that another party had superior title to the property at that time, we nevertheless find that the subsequent affidavit's constructive notice of Snider's hostile claim, coupled with the then-new, openly hostile, and long-continued actions on the property, repudiated the true owners' title as a matter of law. *See Wolgamot*, 523 S.W.2d at 495; *see also Vasquez v. Meaders*, 156 Tex. 28, 291 S.W.2d 926, 927–29 (1956) (tenant's "long-continued, open, notorious, exclusive and inconsistent use and adverse occupancy and claim of title" gave constructive notice of repudiation to true owner). Therefore, even if the limitations period was severed by the letter in 1977, the undisputed evidence establishes that limitations began to run once again as early as 1978 and no later than 1981. *See Wolgamot*, 523 S.W.2d at 495.

## D. Claim of Right

██ In his final argument, Brown contends that Snider failed to argue and es-

---

11. In 2002, Snider Industries, Inc., was converted to Snider Industries, LLP. There is no claim by Brown that the various times of possession by Ronald Snider, Snider Industries, Inc., and Snider Industries, LLP, did not tack to one another.

tablish (and that there is a disputed issue of material fact regarding) whether it entered, possessed, and used the property under a claim of right.

To have a claim of right, "there must be an intention to claim the property as one's own." *Kazmir*, 288 S.W.3d at 564. "Belief that one is the rightful owner and has no competition for the ownership of the land is sufficient intention of a claim of right." *Kazmir*, 288 S.W.3d at 564–65 (citing *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex. 1976)). Although a claim of right may be established by a public declaration of the claim or by open and visible acts, mere adverse beliefs are insufficient. *See Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006) (per curiam); *Ramirez v. Wood*, 577 S.W.2d 278 (Tex. Civ. App.—Corpus Christi 1978, no writ). Entry on and possession of land without a claim of right is a trespass and will not support a claim of title by adverse possession. *City of Houston v. Church*, 554 S.W.2d 242, 245 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

Here, several filings in the deed records of Harrison County, Texas, show public declarations that Snider claimed the property by right. *See Tran*, 213 S.W.3d at 914. In the Affidavit of Use and Possession, Snider's predecessor in interest claimed to own a 94.824-acre tract that included the property at issue, and a correction deed to the same property was filed in 1980. In 1982, Ronald Snider executed a deed of the 94-acre tract to Snider Industries, Inc., which, in 1992, conveyed it to Ronald Snider again, who, three years later, conveyed it back to Snider Industries, Inc., which, in 2002 was converted into Snider Industries, LLP, the defendant-appellee.

As detailed hereinabove, Snider made numerous and long-continuing open, visible, and hostile acts that establish a claim of right to the property. *See id.* Without the permission of Brown or his predecessors in interest, Snider and its predecessors in interest installed the pipeline across the property, dug and maintained a drainage trench, built a road through the property, removed timber and brush from the property, and from 2002 through the time of trial (2016), patrolled the property twice a day to deter trespassers. Here, the undisputed evidence establishes through both public declaration and open, visible acts, that Snider entered, possessed, and used the property under a claim of right.[12] *See id.* Accordingly, we overrule this point of error.

We affirm the trial court's judgment.

12. In support of Brown's argument that "it is undisputed that Snider recognized that the Subject Property was owned by heirs of Ed Jackson," he lists several documents and various unsupported arguments. The 1977 land-swap letter was addressed hereinabove, and the fact that Snider failed to file a trespass to try title action is of no import because Snider lacked a duty to do so. Brown also urges us to consider a 2014 abstract of title, a 1983 trespass to try title suit against Snider filed by Brown's predecessors in interest, the assertion that the 1985 easement to Oney was a settlement contract with Snider reached to end the 1983 lawsuit, and the assertion that Brown and his predecessors paid taxes on the property until 2011, but we do not consider them in our analysis because they were not attached to Brown's summary judgment response, and therefore, there is no competent summary judgment evidence to support them.