

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00171-CV

Leticia **RODRIGUEZ**,
Appellant/Cross-Appellee

v.

Lydia **RODRIGUEZ** and Robert Pereida,
Appellees/Cross-Appellants

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CI19456
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:        Irene Rios, Justice
                Liza A. Rodriguez, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: December 21, 2022

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is an appeal from a judgment awarding title to real property to Leticia Rodriguez. Leticia appeals the amount of damages awarded to her, arguing the trial court erred in reducing her award in an amount equal to "improvements testified to by Defendants [Lydia Rodriguez and Robert Pereida]." In addition, Lydia and Robert have filed a cross-appeal, arguing the trial court erred in awarding title to the property in question to Leticia. We affirm in part, and reverse and render in part.

**BACKGROUND**

The property at issue is a house located on Jewell Street in San Antonio that was previously owned by Francisca Rodriguez (Leticia and Lydia's mother). During her lifetime, Francisca executed four deeds with respect to her Jewell Street home ("the Property"). On March 3, 2008, Francisca conveyed a fee simple interest to Leticia ("2008 Deed"). On June 27, 2008, Francisca signed a Correction Special Warranty Gift Deed that conveyed the Property to Leticia but reserved a life estate ("2008 Correction Deed"). On February 27, 2011, Francisca conveyed the Property to Lydia ("2011 Deed"). On October 29, 2015, the day Francisca died, Lydia acting as "attorney in fact" for Francisca executed a warranty deed that conveyed the Property to herself and her then husband Robert Pereida ("2015 Deed").

Francisca purchased the Property in 1960 and lived there until September 2009. Leticia lived at the Property from March 2008 until she was evicted by Francisca in March 2011. Lydia, acting on behalf of Francisca through a power of attorney, filed a forcible detainer action, arguing that Francisca had a right to possess the Property by virtue of her life estate as enunciated in the 2008 Correction Deed. On May 10, 2011, the trial court granted a writ of possession in favor of Francisca, and Francisca regained possession of the Property. On October 29, 2015, after suffering from cardiac arrest, Francisca passed away.

On October 10, 2017, Leticia filed suit against Lydia and Robert, alleging that she had not learned of the 2011 Deed or the 2015 Deed "until after her mother passed away." She stated that due to these subsequent deeds, she had an existing cloud on title to the Property. At the time of the bench trial, Leticia's live pleading (her Third Amended Petition) alleged a trespass to try title action, seeking declaration that (1) the 2008 Deed conveyed a fee simple interest in the Property to Leticia; or (2) alternatively, the 2008 Correction Deed conveyed the remainder interest in the

Property to Leticia. Leticia also brought a suit to quiet title, arguing that because Francisca no longer owned a fee simple interest in the Property after 2008, the 2011 and 2015 Deeds were void.

In response to the lawsuit, Lydia and Robert countersued. In their live petition (First Amended Counterpetition), they alleged Leticia fraudulently induced Francisca to execute the 2008 Deed. They also alleged that after Leticia was evicted from the Property in 2011, they had adversely possessed the Property.

After a bench trial, the trial court signed a final judgment, granting relief for Leticia on her trespass to try title suit and denying Lydia and Robert's claims for adverse possession and fraudulent inducement. The final judgment granted Leticia "title, conclusive against [Lydia and Robert], to the real property at issue in this cause of action." It also declared the 2011 Deed and the 2015 Deed "invalid and of no legal consequence." It further found that the 2008 Correction Deed "correct[ed] and supplant[ed]" the 2008 Deed. The final judgment further stated that Leticia was entitled to a writ of possession ordering her to be placed in possession of the Property. Finally, the final judgment ordered that Leticia recover from Lydia and Robert, jointly and severally, damages "in the net amount of $900.00, representing the value for the use and occupation of the Property at $600.00 per month from November 1, 2015, through October 1, 2020, reduced by improvements testified to by Defendants [Lydia and Robert]."

Leticia appealed the final judgment, arguing that the trial court erred in reducing the amount of damages awarded to her by "improvements testified to by Defendants [Lydia and Robert]." Lydia and Robert filed a cross-appeal, arguing that (1) the trial court lacked subject-matter jurisdiction over Leticia's claims; (2) the trial court erred in determining that Leticia obtained title to the property by virtue of the 2008 Correction Deed; and (3) assuming Leticia obtained title to the Property by virtue of the 2008 Correction Deed, "her 2017 action would have

been time-barred in view of her 2011 ouster and Lydia's continuous adverse possession thereafter." We will first address the arguments made in Lydia and Robert's cross-appeal.

## SUBJECT MATTER JURISDICTION

"Jurisdiction" refers to "the power of a court, under the Constitution and laws, to determine the merits of an action between parties and to render a judgment." *Gordon v. Jones*, 196 S.W.3d 376, 382 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "Subject-matter jurisdiction refers to the court's power to hear a particular type of suit." *Id*.; *see CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Subject-matter jurisdiction "exists by operation of law only, and cannot be conferred upon any court by consent or waiver." *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000).

Lydia and Robert argue for the first time on appeal that the trial court lacked subject matter jurisdiction over the underlying lawsuit because only a statutory probate court would have subject matter jurisdiction over Leticia's cause of action. According to Lydia and Robert, Francisca's heirs were indispensable parties to Leticia's cause of action pursuant to Texas Rule of Civil Procedure 39(b) and should have been joined in the underlying action. They reason that because the heirs should have been joined as indispensable parties, only a statutory probate court would have subject matter jurisdiction over Leticia's claims. The basis of their argument stems from the possibility, as they see it, that none of the four deeds at issue in the underlying case were valid. In making this argument, they recognize that they did not argue the heirs were indispensable parties in the trial court. Nevertheless, they argue that preserving error was not necessary because the trial court's failure to join the heirs as indispensable parties was fundamental error that deprived the trial court of subject matter jurisdiction. In response, Leticia emphasizes that Lydia and Robert's argument is based on the mere *possibility* that Francisca's heirs had some interest in the Property. Leticia argues that the trial court, as a district court with general jurisdiction, had subject matter jurisdiction over her trespass to try title suit.

"Under circumstances such as this, where jurisdiction is challenged for the first time on appeal, [the supreme court] ha[s] noted that plaintiffs do not have the same opportunities to replead, direct discovery to, or otherwise address the jurisdictional issue as they have when standing is raised in the trial court." *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016). "Thus, when an appellate court is the first to consider jurisdictional issues, it construes the pleadings in favor of the plaintiff and, if necessary, reviews the record for evidence supporting jurisdiction." *Id*.

Here, in her petition, Leticia pled a trespass-to-try-title claim. "An action in trespass-to-try-title, or to quiet title, is a procedure by which rival claims to title or right of possession to real property may be adjudicated." *Gordon*, 196 S.W.3d at 382. A district court "has general, subject-matter jurisdiction over suits involving title to land." *Id*.; *see* TEX. CONST. art. V, § 8 (district court has exclusive, original jurisdiction of "all actions, proceedings, and remedies," except when the constitution or other law confers jurisdiction on some other court); TEX. GOV'T CODE § 24.007 ("The district court has the jurisdiction provided by Article V, Section 8 of the Texas Constitution."); TEX. PROP. CODE § 22.001–.045 (governing trespass-to-try-title actions). As a district court, the trial court had subject-matter jurisdiction over Leticia's claim. Further, the pleadings in this case do not raise the issue of Francisca's heirs having an interest in the Property. It is undisputed that the four deeds at issue in the underlying litigation were executed *before* Francisca's death. Thus, there was no issue in the trial court that the Property could have transferred to Francisca's estate upon her death. Instead, Leticia challenged the deeds conveyed to Lydia on the ground that the Property had previously been conveyed to Leticia. In reviewing this appellate record, we find no basis to hold the trial court lacked subject-matter jurisdiction over the underlying suit. *See Brown v. Snider Indus., LLP*, 528 S.W.3d 620, 625 & n.6 (Tex. App.—

Texarkana 2017, pet. denied) (rejecting appellant's argument in trespass to try title action that the trial court's failure to compel joinder amounted to fundamental error).

We note that in support of their argument, Lydia and Robert rely heavily on a memorandum opinion issued by the Thirteenth Court of Appeals: *In re Frank Schuster Farms, Inc.*, No. 13-10-00225-CV, 2010 WL 2638481 (Tex. App.—Corpus Christi-Edinburg June 29, 2010, orig. proceeding [mand. denied]) (mem. op.). That case, however, is factually distinguishable. In *Schuster Farms*, the property at issue belonged to the decedent's estate. *Id*. at *1. The decedent had created a corporation for the purpose of farming land that he owned; however, he did not transfer all of the land he owned to the corporation. *Id*. Thus, when he died, some of the land transferred to his estate. *Id*. Later, it was discovered that this land had not been distributed to the heirs in the probate proceeding. *Id*. Nevertheless, the corporation used the land, "but did not pay rent on the tracts or otherwise compensate the decedent's heirs, nor did it share royalties on the mineral interests." *Id*. One of the heirs sued the corporation in probate court, alleging that it had misrepresented the contents of her father's estate, converted the estate's assets, and committed fraud, statutory fraud, negligent misrepresentation, and breach of fiduciary duty. *Id*. Five months later, the estate's executor transferred its interest in the land to the heirs. *Id*. A year later, the corporation sued the heir in district court, seeking to quiet title to the land at issue by arguing it owned title through adverse possession. *Id*. The heir then filed in the probate court a motion to transfer the district court action to probate court. The probate court granted the motion and signed "an order transferring the district court cause to itself and ordered that the district court cause be consolidated with the pending probate proceeding." *Id*.

The corporation then sought mandamus relief, arguing that "because the decedent's estate conveyed whatever interest it might have had in the subject properties to the heirs during the pendency of the probate proceeding but prior to the initiation of the district court proceeding, the

district court proceeding was not related to a pending probate proceeding." *Id*. at \*5. The court of appeals rejected this argument, explaining that the lawsuit in district court involved "title to and ownership of land and [was] one pertaining to the collection, settlement, and distribution of the estate of the decedent." *Id*. "Accordingly, under the former law, the lawsuit in the district court was appertaining to or incident to an estate under the explicit terms of the probate code, and thus the probate court had statutory authority to transfer that lawsuit to itself." *Id*. In the instant case, however, there is no allegation that the Property transferred to Francisca's estate. As a matter of fact, it is undisputed that all four deeds were executed before her death. Additionally, unlike in *Schuster Farms*, there is no pending probate proceeding. Accordingly, the analysis in *Schuster Farms* simply does not apply to the facts of this case.

## 2008 CORRECTION DEED

The trial court determined that (1) the 2008 Correction Deed corrected and supplanted the 2008 Deed and that (2) based on the 2008 Correction Deed, Leticia was entitled to a writ of possession. On appeal, Lydia and Robert argue the trial court erred in finding the 2008 Correction Deed valid because they believe the 2008 Correction Deed would have only transferred title to Leticia after she had paid the outstanding property taxes. In support of this argument, they point to language in the deed itself. "The construction of an unambiguous deed is a question of law for the court," which we review de novo. *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)). "When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the deed." *Id*.

"A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed." *Cook v. Nissimov*, 580 S.W.3d 745, 751 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (citing *Day*

*& Co., Inc. v. Texland Petroleum, Inc.*, 786 S.W.2d 667, 668 (Tex. 1990)). Thus, "[a]n owner who wishes to reserve a right or easement from conveying with the conveyed property must make the reservation *by clear language*." *Id*. at 751-52 (emphasis added).

"The words 'exception' and 'reservation,' though at times used interchangeably, each has its own separate meaning." *Id*. at 752. "A reservation is the creation of a new right in favor of the grantor." *Id*. "An exception, by contrast, operates to exclude some interest from the grant." *Id*. "Although an 'exception' can refer to any 'mere exclusion from the grant,' a 'reservation' must 'always be in favor of and for the benefit of the grantor.'" *Id*. (quoting *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 199 (Tex. 2018)). As a general rule, reservations and exceptions in a deed are strongly construed against the grantor and in favor of the grantee. *Reagan v. Marathon Oil Co.*, 50 S.W.3d 70, 80 (Tex. App.—Waco 2001, no pet.); *Graham v. Kuzmich*, 876 S.W.2d 446, 449 (Tex. App.—Corpus Christi-Edinburg 1994, no pet.). Finally, "when construing obligations in a deed, we look to its plain language." *Chicago Title Ins. Co. v. Cochran Invs., Inc.*, 602 S.W.3d 895, 904 (Tex. 2020).

The 2008 Correction Deed states the following:

**Reservations from Conveyance:**

For Grantor and Grantor's assigns, a reservation of the full possession, benefit, and use of the Property for the remainder of the life of Grantor, as a life estate.

**Grounds for Corrected Conveyance:**

This conveyance corrects a warranty deed from Grantor to Grantee, dated March 3, 2008 . . . signed in error. The original deed did not contain the life estate which the grantor was to reserve for herself nor did it contain a provision for the grantee to take subject to the outstanding ad valorem tax liability.

**Exceptions to Conveyance and Warranty:**

Validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2008

and for prior years, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, gives, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Grantor but not otherwise, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

As a material part of the Consideration for this deed, Grantor and Grantee agree that Grantee is taking the Property "AS IS" with any and all latent and patent defects and that there is no warranty by Grantor that the Property has a particular financial value or is fit for a particular purpose. Grantee acknowledges and stipulates that Grantee is not relying on any representation, statement, or other assertion with respect to the Property condition but is relying on Grantee's examination of the Property. Grantee takes the Property with the express understanding and stipulation that there are no express or implied warranties except for limited warranties of title set forth in this deed.

The plain language of the 2008 Correction Deed clearly reserves a life estate for Francisca. Lydia and Robert argue that the deed also conditioned the passage of title to Leticia upon her payment of "taxes for 2008 and for prior years." We disagree with this interpretation of the deed. The phrase "taxes for 2008 and for prior years, which Grantee assumes and agrees to pay" is found in the paragraph titled "Exceptions to Conveyance and Warranty." Lydia and Robert contend the phrase refers to an exception from title. However, such an interpretation is illogical as liability for payment of property taxes is not part of the estate conveyed. *See Rancho Viejo Cattle Co. v. ANB Cattle Co.*, 642 S.W.3d 850, 859 (Tex. App.—San Antonio 2021, pet. filed) (explaining that "[f]ee ownership is the right to possess the entire bundle of sticks"—that is, "the entire group of rights— the right to use, possess, and dispose—associated with the property"). Instead, property taxes are imposed on real property by taxing units. *See* TEX. TAX CODE §§ 1.02, 1.04, 11.01. Accordingly,

for the phrase "taxes for 2008 and for prior years" to make logical sense in the context of the entire deed, the phrase must refer to the concept of liability. That is, the phrase communicates that Grantor does not warrant the payment of past taxes; thus, the language places the Grantee on notice that the payment of taxes for 2008 and prior years may still be outstanding and that the Grantor is not promising the payment of any taxes assessed before conveyance. *See Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("One who purchases property does so subject to any delinquent taxes.").

This interpretation is consistent with the language contained in other provisions of the deed. Lydia and Robert argue the "subject to" clause in the granting paragraph reflects the grantor's intent for title to pass only when the property taxes were paid. "Generally, 'the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral' or other interest is outstanding." *See Barrow Shaver Res. Co. v. NETX Acquisitions, LLC*, No. 06-20-00081-CV, 2021 WL 3571394, at *5 (Tex. App.—Texarkana Aug. 13, 2021, pet. denied) (quoting *Wenske*, 521 S.W.3d at 796). Here, the granting clause states that "Grantor, for the Consideration and *subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty*, grants, gives, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever." (emphasis added). In reading the entire deed as a whole document, we conclude this "subject to" language is consistent with our interpretation of the phrase "taxes for 2008 and prior years" referring to the concept of warranty. Consistent with our interpretation, the granting clause grants and conveys the Property to Leticia subject to the reservation (i.e., Francisca's life estate) and the Exceptions to Conveyance (i.e., any validly existing easements, rights-of-way, and prescriptive rights) and Warranty (i.e., the liability for past and future taxes on the Property). Accordingly, we disagree with Lydia and Robert that

the passage of title was conditioned on the payment of taxes. We conclude the "subject to" clause does not affect the interest conveyed to Leticia because the subject to clause is intended to protect the grantor from claims for breach of warranty.

Lydia and Robert further argue that the phrase "agrees to pay" imposes an obligation on Leticia and makes the passage of title conditional. As noted, the phrase in question states, "taxes for 2008 and for prior years, which Grantee assumes and agrees to pay, and subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantee assumes." We disagree with Lydia and Robert that this language makes the entire deed conditional. The language is consistent with a warranty provision, as it is emphasizing that the Grantor has not warranted payment of taxes and the Grantee has instead agreed to pay that obligation imposed by taxing units. We thus hold that Leticia's title to the Property was not conditioned on her payment of the taxes. Accordingly, the trial court did not err in finding the 2008 Correction Deed valid, and the later 2011 and 2015 deeds invalid and of no consequence.

### ADVERSE POSSESSION

Lydia and Robert also bring an issue with respect to adverse possession. Having held that the 2008 Correction Deed passed title to Leticia, we need not address Lydia and Robert's adverse possession argument with respect to the first 2008 Deed. With respect to the 2008 Correction Deed, the record reflects that Francisca evicted Leticia from the Property in 2011 because Francisca's life estate gave her greater right of possession. Thus, Francisca evicting Leticia from the Property in 2011 was not inconsistent or hostile to Leticia's interest in the Property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1). We conclude Lydia and Robert's adverse possession argument has no merit.

**DAMAGES**

Having addressed Lydia and Robert's cross-appeal, we now consider Leticia's appellate issue: whether the trial court erred in reducing the damages awarded to her by "improvements testified to by Defendants [Lydia and Robert]." Leticia argues Lydia and Robert were required to affirmatively plea for an offset in the amount of improvements they made to the Property, and because they failed to do so, the trial court erred in reducing Leticia's award.

A judgment must conform to the pleadings filed in a case. TEX. R. CIV. P. 301. "Thus, a party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). As noted, the trial court's judgment in this case awarded damages to Leticia "in the net amount of $900.00, representing the value for the use and occupation of the Property at $600.00 per month from November 1, 2015, through October 1, 2020, *reduced by improvements* testified to by Defendants [Lydia and Robert]." (emphasis added). Section 22.021 of the Texas Property Code, titled "Claim for Improvements," allows a defendant in a trespass to try title action to seek compensation for improvements to the property upon certain specified pleadings and proof. *See Lemus v. Aguilar*, 491 S.W.3d 51, 61 (Tex. App.—San Antonio 2016, no pet.) ("Texas Property Code section 22.021 does not allow for direct reimbursement for money spent, but rather for the value of the improvements offset by the value of use and occupancy."). Specifically, section 22.021 requires a defendant in a trespass to try title action to plead:

(1) that the defendant and those under whom the defendant claims have had good faith adverse possession of the property in controversy for at least one year before the date the action began;

(2) that they or the defendant made permanent and valuable improvements to the property while in possession;

(3) the grounds for the claim;

(4) the identity of the improvements; and

(5) the value of each improvement.

TEX. PROP. CODE § 22.021(c). Thus, for the trial court's judgment to conform with the pleadings in this case, Lydia and Robert needed in their pleadings to state a claim for improvements pursuant to section 22.021.

In response, Lydia and Robert emphasize the general legal principle that the trial court, as fact finder, had discretion to adjust Leticia's award. *See Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.) (explaining that the "jury generally has had broad discretion to award damages within the range of evidence presented at trial"). Lydia and Robert's argument, however, ignores the fact that the trial court in its judgment specifically stated it reduced Leticia's award by "improvements testified to by Defendants [Lydia and Robert]." Thus, the trial court explicitly credited Lydia and Robert for improvements they made. Accordingly, unless Lydia and Robert's pleadings support such a claim under section 22.021 (or unless the issue was tried by consent), the trial court erred in signing a judgment that did not conform to the pleadings. *See Montoya v. Gutierrez*, No. 04-19-00070-CV, 2019 WL 5580263, at *3 (Tex. App.—San Antonio 2019, no pet.) (holding that because defendant did not plead her affirmative bona fide purchaser defense and because the issue was not tried by consent, the trial court erred in signing a judgment "based on her bona fide purchaser defense when it was neither pleaded [n]or tried by consent"). We first consider whether Lydia and Robert's pleadings state a claim for improvements pursuant to section 22.021.

Texas is a fair notice pleading jurisdiction. *See* TEX. R. CIV. P. 45; *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). Under this standard, we look to "whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Porterfield v. Deutsche Bank Nat'l Tr. Co.*, No.

04-20-00151-CV, 2021 WL 4976560, at *12 (Tex. App.—San Antonio 2021, pet. denied). Because Leticia did not specially except to Lydia and Robert's pleadings, we construe those pleadings liberally in Lydia and Robert's favor. *See id.*

In support of their assertion that they gave Leticia fair notice of their claim for improvements made, Lydia and Robert point to paragraphs four and five of their live pleadings:

> 4. At the time Counter Defendant [Leticia] was court-ordered to vacate the premises, in May 2011, Counter Defendant Leticia Rodriguez destroyed the residence, making it unhabitable. Counter Defendant took the home's air conditioner, damaged electrical and telephone wiring, and destroyed interior walls, depriving her mother of a safe and healthy living environment. Counter Defendant's conduct is inconsistent with claiming ownership of the destroyed property. Counter Plaintiff claims that Counter Defendant Leticia Rodriguez never owned the property based on the fraudulent inducement by which she obtained documents, [and] Counter Defendant Leticia has abused and exploited an elderly person.
>
> 5. To protect Francisca Rodriguez, and her property, Counter Plaintiff Lydia Rodriguez then moved into the residence, paid the property taxes and all other utilities and maintenance and repair expenses beginning in 2011. Counter Plaintiff now claims total and complete ownership by adverse possession in that she has held the land in peaceable and adverse possession from that day to the present.

Construing these allegations liberally, we conclude Leticia was not fairly notified of a claim for improvements under section 22.021. Paragraph four discusses allegations relating to Leticia's actions being inconsistent with ownership. Paragraph five discusses facts relating to adverse possession. The only statement about improvements is a phrase in one sentence about Lydia paying "repair expenses." There are no allegations regarding the "the identity of the improvements" or "the value of each improvement" as required under section 22.021. Therefore, we conclude Lydia and Robert's live pleadings do not state a claim for improvements under section 22.021.[1]

---

[1] We note that in their brief, Lydia and Robert argue they have an "equitable" claim for improvements, but provide no authority for why the explicit requirements of section 22.021 would not have supplanted any equitable claim.

Because Lydia and Robert's live pleadings do not conform to the offset they were credited in the trial court's judgment, the trial court erred in granting that offset unless the issue was tried by consent. *See Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that because the trial court's judgment did not conform to the pleadings, the trial court erred in granting such relief "in the absence of pleadings to support such relief or trial by consent"). "If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* TEX. R. CIV. P. 67, 301. "To determine whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." *Flowers*, 407 S.W.3d at 458. Here, the record does not reflect that the issue regarding Lydia and Robert being credited an offset for improvements made was tried by consent. During opening statement, Leticia's counsel emphasized to the court that Lydia and Robert had not made a claim for improvements in their pleadings. Again, during closing argument, Leticia's counsel emphasized multiple times that Lydia and Robert had not pled a claim for improvements. Because we conclude Leticia did not allow Lydia and Robert's claim for improvements to be tried by consent, we hold the trial court erred in reducing the amount of damages awarded Leticia by the amount of improvements made by Lydia and Robert, as Lydia and Robert's live pleadings do not support such a claim for improvements. *See id.*; *Moneyhon*, 278 S.W.3d at 878.[2]

---

[2] We note that in responding to Leticia's issue, Lydia and Robert argue there is no evidence to support damages in the amount of $600.00 per month for occupation and use of the Property, pointing to evidence that Leticia damaged the Property when she lived there previously. However, it is undisputed that the Property had been repaired during Francisca's life when she had possession of the Property, and there was ample evidence that $600 per month for occupation and use of the Property was reasonable. In essence, Lydia and Robert are complaining that they expended money for improvements; however, as explained, because they failed to plead a claim for improvements, they are not entitled to be credited that amount in the final judgment.

## CONCLUSION

Because we conclude that Leticia's title to the Property was not conditioned on her payment of the taxes, we hold the trial court did not err in finding the 2008 Correction Deed valid, and the later 2011 and 2015 deeds invalid and of no consequence. Further, we find no merit in Lydia and Robert's adverse possession argument. Finally, we hold the trial court erred in reducing Leticia's award "by improvements testified to by Defendants [Lydia and Robert]," because Lydia and Robert's pleadings do not support a claim for improvements and the issue was not tried by consent. Therefore, we reverse the portion of the trial court's judgment reducing Leticia's award "by improvements testified to by Defendants" and render judgment that Leticia recover from Lydia and Robert, jointly and severally, damages in the amount of $35,400, representing the value for the use and occupation of the Property at $600.00 per month from November 1, 2015, through October 1, 2020. We affirm the remainder of the trial court's judgment.

Liza A. Rodriguez, Justice