ACCEPTED
15-25-00221-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/2/2026 4:44 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00221-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/2/2026 4:44:43 PM
CHRISTOPHER A. PRINE
Clerk

## COURT OF APPEALS
### for the
## FIFTEENTH DISTRICT OF TEXAS
## AUSTIN, TEXAS

**In re The Highland Dallas Foundation, Inc., The Highland Kansas City Foundation, Inc., and the Highland Santa Barbara Foundation, Inc.,**

**Relators**

Original Proceeding from Cause No. 25-BC01B-0027 in the
Business Court of the State of Texas, First Division
*Hon. William Whitehill, Presiding Judge*

## RESPONSE TO PETITION FOR WRIT OF MANDAMUS

**Brian P. Shaw**
  Texas Bar No. 24053473
  Email: bshaw@ccsb.com
**Kenneth Carroll**
**Monica E. Gaudioso**
**Andrea C. Reed**
**Emily H. Owen**
**CARRINGTON, COLEMAN,
 SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000 – Telephone
(214) 580-2641 – Facsimile

**ATTORNEYS FOR REAL
PARTIES IN INTEREST**

# TABLE OF CONTENTS

Table of Contents ............................................................................... 2

Table of Authorities ........................................................................... 4

Record Citations and Definitions ...................................................... 8

Supplement to Statement of Issues Presented .................................. 9

Summary of Response ...................................................................... 10

Supplement to Statement of Facts .................................................. 13

    A.      Factual Background ................................................................ 13

    B.      Procedural History ................................................................. 18

Argument ......................................................................................... 22

    A.   Mandamus is unavailable when an order could be upheld on any ground supported by the record before the trial court. ........... 22

    B.   The trial court did not abuse its broad discretion in finding DAF HoldCo is a necessary party .................................................. 24

        1.   The Dondero Organizations fail to address every basis for abatement under the trial court record; so the Court should deny mandamus without going further. ............................................. 30

        2.   The trial court had discretion to determine DAF HoldCo is a necessary party under Rule 39(a)(1). .......................................... 32

            a.   The trial court correctly characterized the Dondero Organizations' claims as derivative. ....................................... 32

            b.   The trial court also had discretion to determine that DAF HoldCo is a necessary party under Rule 39(a)(1) because complete relief cannot be afforded by the current defendants. 40

            c.   The trial court also had discretion to find DAF HoldCo is a necessary party under Rule 39(a)(2). ...................................... 42

    C.   The trial court acted within its broad discretion in abating this case. ...................................................................................... 47

    D.   Why do the Dondero Organizations refuse to add DAF HoldCo as a party? ............................................................................ 48

Prayer .............................................................................................. 49

Rule 52.3(j) Certification ................................................................. 51

Certificate of Compliance .............................................................. 51

Certificate of Service ................................................................... 52

**Cases**                                                                  **Page(s)**

*In re Aleman*,
No. 15-25-00099-CV, 2025 WL 1710793 (Tex. App.—15th
Dist.] June 19, 2025, orig. proceeding) (per curiam) ......................... 23

*April Sound Mgmt. Corp. v. Concerned Prop. Owners for
April Sound, Inc.*,
153 S.W. 3d 519 (Tex. App.—Amarillo 2004, no pet.) ....................... 47

*Associated Bankers Credit Co. v. Meis*,
456 S.W.2d 744 (Tex. App.—Corpus Christi 1970, no writ) .............. 46

*Atlas IDF, LP v. NexPoint Real Estate Partners, LLC, et al.*,
Cause No. 25-BC01B-004 (Tex. Bus. Ct., 1st Div. Dec. 8,
2025) ................................................................................................... 14

*In re Austin Hous. Fin. Corp.*,
No. 03-22-00091-CV, 2022 WL 2960796 (Tex. App.—
Austin July 27, 2022, orig. proceeding) (mem. op.) ........................... 27

*Brown v. Snider Industries, LLP*,
528 S.W.3d 620 (Tex. App.—Texarkana 2017, pet. denied) ........ 25, 47

*In re Cerberus Capital Mgmt., L.P.*,
164 S.W.3d 379 (Tex. 2005) (orig. proceeding) .................................. 24

*Conrad Const. Co., Ltd v. Freedmen's Town Preservation
Coalition*,
491 S.W.3d 12 (Tex. App.—Houston [14th Dist.] 2016) ..................... 25

*Cooper v. Tex. Gulf Indus., Inc.*,
513 S.W.2d 200 (Tex. 1974) ............................................................... 25

*Crawford v. XTO Energy, Inc.*,
509 S.W.3d 906 (Tex. 2017) .................................................... 26, 27, 44

*CSR Ltd. v. Link*,
925 S.W.2d 591 (Tex. 1996) ............................................................... 23

*Dondero v. Jernigan,*
No. 24-10287, 2025 WL 1122466 (5th Cir. Apr. 16, 2025) ............... 49

*Doty v. Davidson,*
No. 04-20-00583-CV, 2022 WL 2334547 (Tex. App.—San
Antonio June 29, 2022, pet. denied) ................................................ 26

*Downer v. Aquamarine Operators, Inc.,*
701 S.W.2d 238 (Tex. 1985) ........................................................... 23

*In re East Tex. Medical Center,*
714 S.W.3d 111 (Tex. App.—Tyler 2023, orig. proceeding) .............. 22

*Feiner Family Trust v. VBI Corp.,*
No. 07 Civ.1914, 2007 WL 2615448 (S.D.N.Y. Sep. 11,
2007) ........................................................................................ 38, 39

*In re Harbinger Capital Partners Funds Investor Litigation,*
2013 WL 7121186 (S.D.N.Y. Dec. 16, 2013) ......................... 33, 35, 40

*Heard v. Moore,*
101 S.W. 3d 726 (Tex. App.—Texarkana 2003, pet. denied) ............. 47

*Henderson v. Gordon,*
No. 01-16-01007-CV, 2018 WL 3848777 (Tex. App.—
Houston [1st Dist.] Aug. 14, 2018, no pet.) ...................................... 44

*In re Highland Capital Mgmt., L.P.,*
No. 19-34054-SGJ-11, 2023 WL 2395677 (Bankr. N.D.
Tex. Mar. 6, 2023) ..................................................................... 10, 15

*In re Highland Capital Mgmt., L.P.,*
No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex.
Aug. 4, 2021), *vacated and remanded sub nom. Matter of
Highland Capital Mgmt., L.P.,* 98 F.4th 170 (5th Cir.
2024) ............................................................................................ 13

*In re Highland Capital Mgmt., L.P.,*
No. 19-34054-SGJ11, 2022 WL 3959550 (Bankr. N.D. Tex.
Aug. 30, 2022) ............................................................................... 15

*In re Indep. Fuel Sys. LLC,*
    655 B.R. 322 (Bankr. E.D. Tex. 2023) ............................................. 45

*KCM Fin. LLC v. Bradshaw,*
    457 S.W.3d 70 (Tex. 2015) ............................................................. 45

*Lee v. Ty Equity Grp., Inc.,*
    No. CIV. A. 3:01-CV-0253, 2001 WL 1401395 (N.D. Tex.
    Nov. 8, 2001) ................................................................................ 32

*Long v. Lopez,*
    115 S.W.3d 221 (Tex. App.—Fort Worth 2003, no pet.) .................... 44

*Longoria v. Exxon Mobil Corp.,*
    255 S.W.3d 174 (Tex. App.—San Antonio 2008, pet.
    denied) .......................................................................... 25, 30, 44, 47

*Munters Corp. v. Locher,*
    936 S.W.2d 494 (Tex. App.—Houston [14th Dist.] 1997,
    writ denied) .................................................................................. 43

*In re Occidental West Texas Overthrust, Inc.,*
    626 S.W.3d 395 (2021) ............................................................. 26, 44

*Peskin v. Anderson,*
    [2001] 1 B.C.L.C. 372 ................................................................ 38, 39

*Pierce v. Blalack,*
    535 S.W.3d 35 (Tex. App.—Texarkana 2017, no pet.) ...................... 25

*In re Prudential Ins. Co. of Am.,*
    148 S.W.3d 124 (Tex. 2004) ........................................................... 23

*Ring & Ring v. Sharpstown Mall Tex., LLC,*
    No. 01-16-00341-CV, 2017 WL 3140121 (Tex. App.—
    Houston [1st Dist.] July 25, 2017, no pet.) ...................................... 41

*Royal Petroleum Corp. v. Dennis,*
    332 S.W.2d 313 (Tex. 1960) ........................................................... 32

*In re State Farm Lloyds*,
   520 S.W.3d 595 (Tex. 2017) (orig. proceeding) ............................ 23, 24

*In re Stevens*,
   971 S.W.2d 757 (Tex. App.—Beaumont 1998, orig.
   proceeding) ...................................................................................... 22

*In re Sting Soccer Group, LP*,
   No. 05-17-00317-CV, 2017 WL 5897454 (Tex. App.—
   Dallas Nov. 30, 2017, orig. proceeding) ....................................... 23, 24

*In re TCW Project Fund II, Ltd.*,
   274 S.W.3d 166 (Tex. App.—Houston [14th Dist.] 2008,
   orig. proceeding) ............................................................................. 31

*Tianrui (Int'l) Holding Co. Ltd. v. China Shanshui Cement
   Grp. Ltd.*,[2024] UKPC 36 .............................................. 34, 35, 36, 37

*Matter of Tr. A & Tr. C. Established Under Bernard L. &
   Jeannette Fenenbock Living Tr. Agreement, Dated March
   12, 2008*,
   690 S.W.3d 80 (Tex. 2024) .............................................................. 42

*In re Travelers Prop. Casualty Co. of America*,
   485 S.W.3d 921 (Tex. App.—Dallas 2016, orig. proceeding).. 22, 31, 43

*Walker v. Packer*,
   827 S.W.2d 833 (Tex. 1992) ........................................................... 23, 24

**Statutes**

11 U.S.C. § 1515 ................................................................................... 18

**Other Authorities**

FED. R. CIV. P. 19 ................................................................................. 32

TEX. R. CIV. P. 93(1) ........................................................................... 19

TEX. R. APP. P. 52.3 .......................................................................... 13, 14

TEX. R. CIV. P. 39 ....................................................................... *passim*

## RECORD CITATIONS AND DEFINITIONS

The Mandamus Record is cited as "MR[page number]."

"Charitable DAF" means collectively the Real Parties in Interest, DFW Charitable Foundation, CDMCFAD, LLC, Charitable DAF GP, LLC, and CDH GP, Ltd. (each a "Charitable DAF Entity"), and Mark Patrick.

"Dondero" means James Dondero.

"DAF HoldCo" means Charitable DAF HoldCo, Ltd.

"Dondero Organizations" means Relators.[1]

"Fund" means Charitable DAF Fund, L.P.

"Patrick" means Defendant Mark Patrick.

"Petition" means the Dondero Organizations' Petition for Writ of Mandamus.

"JOLs" means the Joint Official Liquidators appointed by the Grand Court of the Cayman Islands to manage the winding up of DAF HoldCo.

---

[1] The Dondero Organizations complain about the Charitable DAF's use of this term to describe them. MR0443. The Charitable DAF uses this term not as "*ad hominem framing*," but instead because it is the most accurate description of the Relators. *Id.* (emphasis in original). To be clear, none of the Dondero Organizations are themselves "charities" as they euphemistically define themselves in the Petition. Petition p. 4. Instead, they are entities created by Dondero—hence the "Highland" moniker—and Dondero sits on the board of directors of each. MR0227. Dondero admits under oath he is personally funding this litigation *Id.* For all intents and purposes, Dondero is the Relator.

## SUPPLEMENT TO STATEMENT OF ISSUES PRESENTED

The Dondero Organizations' Statement of Issues Presented incorrectly limits mandamus consideration of the abatement order to the trial court's order that specifically addresses one discrete issue raised by the Dondero Organizations in their request for reconsideration of the abatement and joinder order. Under the well-recognized standard of review on mandamus, the following issue is presented by the Petition:

- Whether the trial court had discretion to abate the case on *any* ground supported by the record?

## SUMMARY OF RESPONSE

At its core, this is a dispute for control over the Charitable DAF between James Dondero, who seeks to exercise de facto control, and Mark Patrick and Paul Murphy, who exercise de jure control under the various governing documents. Manufactured, years-old allegations of wrongdoing and worldwide litigation are about one thing: Dondero's attempt to control the assets of the Charitable DAF, which he considers his own. *See In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ-11, 2023 WL 2395677, at \*10 (Bankr. N.D. Tex. Mar. 6, 2023).

Here, the Dondero Organizations refuse to take the simple steps necessary to comply with the trial court's modest order requiring the joinder of necessary parties and abatement pending their joinder, pursuant to TEX. R. CIV. P. 39(a). Instead, they request extraordinary mandamus relief second-guessing the trial court's exercise of its broad discretion on party-joinder decisions. The Dondero Organizations' refusal even to attempt to comply with the abatement order—and instead to seek to have this Court overturn it—speaks volumes.

The Dondero Organizations take a two-step approach predicated on ignoring applicable law. First, they ignore the standards under

Rule 39 to argue the trial court was required to take the Dondero Organizations' live pleading as true on issues of joinder. Second, they ignore the mandamus standard and attempt to confine the trial court's entire ruling—and this Court's scope of review—to the limited reconsideration grounds the Dondero Organizations raised after the trial court's original ruling. But the trial court never stated that its joinder and abatement ruling was predicated solely on the grounds addressed on reconsideration, and the Dondero Organizations' attempt to divine such a restrictive intention is presumptuous and improper.

Mandamus must not issue if *any ground in the record* supports the trial court's exercise of its discretion to abate. The trial court had ample basis to order joinder and to abate, and the Dondero Organizations did not defeat, or even attempt to defeat, each basis as a matter of law. To use a bowling analogy, to obtain extraordinary mandamus relief, the Dondero Organizations needed to knock down every pin, not just one. The inquiry should end there—mandamus denied.

Even if this Court inappropriately limited itself to the "one pin" raised by the Dondero Organizations, mandamus should still be denied because the trial court acted within its discretion in finding that the

claims the Dondero Organizations attempt to raise are derivative claims and that DAF HoldCo, therefore, is a necessary party.

The Dondero Organizations' "Statement of Facts" is improperly argumentative (*see* TEX. R. APP. P. 52.3(g)) and states hotly contested allegations as "fact" that are vehemently denied in the underlying litigation. But as most of the alleged "facts" are not relevant to this mandamus proceeding, the Charitable DAF will not divert the Court's attention by engaging in a point-by-point rebuttal. However, the Dondero Organizations omit key information that is relevant to this mandamus proceeding.

## A.    Factual Background

Although the Petition notably fails to mention Dondero once, Dondero is funding this litigation. MR0227. He also funds the JOLs, who were appointed to manage the winding up of DAF HoldCo in the Cayman Islands. MR1672-73. Dondero originally set up the Charitable DAF for "efficient management" such that power over it was "concentrated in one person." MR0016. Initially Dondero put Grant Scott in place, "Dondero's long-time friend, college housemate, and best man at his wedding" who later "resigned from that role [] after apparent disagreements with Mr. Dondero." MR0349-50 (quoting *In re Highland Capital Mgmt., L.P.*, No.

19-34054-SGJ11, 2021 WL 3418657, at *1 (Bankr. N.D. Tex. Aug. 4, 2021), *vacated and remanded sub nom. Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024)). Now the control person is Patrick, who was not "Dondero's long-time friend." MR0350. Instead, Patrick is a tax advisor who Dondero swore is "well-qualified tax counsel." MR0019; *see also* MR0227.

Patrick is not in sole control of the Charitable DAF—he ceded partial control to "a person named Paul Murphy based in the Cayman Islands …." MR0222. So two individuals currently control the Charitable DAF. *Id.*

Dondero swears that Patrick "became openly hostile towards the Charities, my affiliated companies, and me." MR0227. It is true that, among other things, entities controlled by the Charitable DAF asked Dondero to pay on substantial obligations—and Dondero refused. MR0350 (citing, *e.g.*, *Atlas IDF, LP v. NexPoint Real Estate Partners, LLC, et al.,* Cause No. 25-BC01B-004 (Tex. Bus. Ct., 1st Div. Dec. 8, 2025) (judgment entered against Dondero entity for ~$14.6M)).[2] And the

---

[2] Atlas is not owned by Charitable DAF. MR0351. A Charitable DAF subsidiary is the investment manager of Atlas. *Id.*

Dondero Organizations accurately allege that "communications between Mr. Patrick … and [Dondero] began to become less frequent." MR0222. That was Patrick and Paul Murphy fortifying the independence of the Charitable DAF. *Id.*

For example, NexPoint is Dondero's newest "alternate investment firm," after Highland Capital Management, L.P. ("Highland"), his former alternative investment firm, was forced to file bankruptcy. MR0351 (citing *Highland Capital*, 116 F.4th at 429); MR0218. As Dondero notes in his Declaration, at one point "NexPoint provided, without charge, investment ideas to" the Charitable DAF. MR0222. In the best interests of the Charitable DAF, the Charitable DAF no longer accepts Dondero's "investment ideas," *i.e.*, investing in Dondero's deals. MR0222; MR0352. In addition, Patrick resigned from his position at Skyview, "a service organization that provided support primarily to Mr. Dondero and entities in which Mr. Dondero had an interest." MR0020; MR0352 (citing *In re Highland Capital Mgmt., L.P.*, No. 19-34054-SGJ11, 2022 WL 3959550, at *16 (Bankr. N.D. Tex. Aug. 30, 2022) ("Skyview being owned and operated by individuals previously employed by Highland")).

Patrick had no legal obligation to work for Dondero's companies, or to accept their services on behalf of the Charitable DAF, or to have the Charitable DAF make investments in Dondero's self-interested transactions, *i.e.,* his "investment ideas." MR0222; MR0352.

The Dondero Organizations allege that the Defendants stole $270 million in assets owned by the Charitable DAF Fund, a non-party. MR0020. Another non-party, DAF HoldCo, a Cayman company, was the limited partner of the Fund. MR0058; MR1788. DAF HoldCo was entitled to discretionary distributions from the Fund as determined by the Fund's general partner in its sole discretion. MR0066; MR0355.

The Dondero Organizations each held only "Participating Shares" in DAF HoldCo. MR0015. The Participating Shares are non-voting, non-redeemable shares that entitled the Dondero Organizations to discretionary dividends (which came from DAF HoldCo's discretionary distributions from the Fund) as determined by the "Control Position"[3] of DAF HoldCo in its sole discretion. MR0080; MR0082-84; MR0360. The Participating Shares did not confer any right to be given notice of,

---

[3] At most times relevant to this mandamus petition, Defendant Mark Patrick was the Control Position of DAF HoldCo. MR0222. The Control Position holds the Management Shares of DAF HoldCo. MR0219-20.

vote at, or be present at any general meetings of DAF HoldCo. MR0084. Instead, such rights only lie with the directors and the holders of the Management Shares. MR0089-92.

The Dondero Organizations allege that Defendants diluted the value of their Participating Shares in DAF HoldCo by stealing $270 million in assets belonging to the Charitable DAF Fund. MR0025; MR0032.

Prior to the filing of the underlying lawsuit, DAF HoldCo was placed in voluntary liquidation proceedings in the Grand Court of the Cayman Islands (the "Cayman Proceeding"). MR0027. The Dondero Organizations later filed an involuntary Petition for Winding Up DAF HoldCo in that same court. MR0028. And as they note, the Dondero Organizations "alleged essentially the same facts recounted in this [lawsuit] before the Grand Court." MR0028. The proceedings in the Cayman Islands culminated in the appointment of Joint Official Liquidators ("JOLs"). MR0029. The JOLs are already empowered to wind up DAF HoldCo and distribute its assets, if any. MR0374. The

JOLs are also currently seeking foreign recognition under Chapter 15 in the U.S. Bankruptcy Court in Delaware.[4] MR0725.

## B.    Procedural History

Defendants filed a Supplemental Brief and Alternative Motion to Abate challenging capacity and the lack of necessary parties on August 11, 2025. MR1121-47. They asserted that DAF HoldCo (which would participate in any litigation through the JOLs) is a required party under TEX. R. CIV. P. 39(a) on four independent grounds:

1.    the Dondero Organization's claims are derivative, making DAF HoldCo a necessary party under Rule 39(a)(1), MR1138;

2.    the Dondero Organizations pray for relief that can only be afforded to them by DAF HoldCo, making DAF HoldCo a necessary party under Rule 39(a)(1), MR1138;

3.    DAF HoldCo claims an interest and is situated such that disposition of this action without it as a practical matter impairs or impedes its ability to protect that interest, making

---

[4] A Chapter 15 recognition petition is a filing by a foreign representative in a U.S. bankruptcy court seeking recognition of a foreign insolvency proceeding. 11 U.S.C. § 1515.

DAF HoldCo a necessary party under Rule 39(a)(2)(i), MR1140; and

4. DAF HoldCo's absence leaves the Defendants who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations under Rule 39(a)(2)(ii) if relief is entered in Texas that conflicts with the JOLs' positions or the Cayman court's directives, MR1140.

Based on those joinder predicates, the Charitable DAF asked the court to abate and require joinder of DAF HoldCo. MR1144.

On September 18, 2025, the trial court denied dismissal on standing and statutory jurisdiction grounds, reserved a ruling on capacity because no verified denial was filed under Rule 93(1), and held that the JOLs are necessary parties under Rule 39(a), that they are not parties to the lawsuit, and that the court cannot provide complete relief in their absence. MR1836-38. The trial court abated the case until DAF

HoldCo (through the JOLs)[5] became parties, voluntarily or involuntarily, and required leave of court for further filings. MR1838.

On October 22, 2025, the Dondero Organizations sought leave to move for reconsideration of the "complete relief" ruling. MR1841. The motion focused on two points: first, that Rule 39(a)(1) confines the complete-relief inquiry to relief between *existing* parties and the court therefore erred in treating effects on DAF HoldCo, a non-party, as a barrier to proceeding; and second, that their claims are direct under Cayman law, so DAF Holdco is not a required party, or, alternatively, that the court should proceed in equity under Rule 39(b) even if Rule 39(a) were implicated. MR1849-53.

On October 31, 2025, the court granted leave, deemed the reconsideration motion filed, and denied it. MR1856-58. In denying reconsideration, the court noted that in granting the abatement, it had rejected plaintiffs' premise that the claims are direct and determined that, under Cayman law, the claims are derivative. MR1857-58. The

[5] For purposes of joinder, the JOLs and DAF HoldCo are one and the same as the JOLs are currently the only persons authorized to participate in litigation on behalf of DAF HoldCo. For the sake of brevity and clarity, the necessary party is referred to as DAF HoldCo in this Response.

trial court in no way cabined its entire abatement order to the direct/derivative determination. MR1836-38; MR1856-58.

The Dondero Organizations inexplicably have never even attempted to add DAF HoldCo as a party or sought to explain to the trial court why they could not. MR1866-68. Instead, a month after the trial court denied reconsideration, the Dondero Organizations filed the Petition, seeking mandamus from this Court. *See* Petition.

## ARGUMENT

### A. Mandamus is unavailable when an order could be upheld on any ground supported by the record before the trial court.

When considering a petition for a writ of mandamus, the appellate court must "focus on the result reached by the trial court rather than its reasons." *In re East Tex. Medical Center*, 714 S.W.3d 111, 114 (Tex. App.—Tyler 2023, orig. proceeding) (quoting *In re Stevens*, 971 S.W.2d 757, 760 (Tex. App.—Beaumont 1998, orig. proceeding)). This is "because a trial court cannot abuse its discretion if it reaches the right result for the wrong reason"; an appellate court must therefore uphold an order "on any grounds supported by the record before the trial court." *In re Travelers Prop. Casualty Co. of Am.*, 485 S.W.3d 921, 925 (Tex. App.—Dallas 2016, orig. proceeding); *see also In re East Tex. Medical Center*, 714 S.W.3d at 114 ("If the trial court expresses an incorrect legal reason for its ruling, we will nevertheless uphold the order on any other grounds supported by the record."). That is to say, the Dondero Organizations must demonstrate the trial court had no discretion to grant abatement as to every ground supported by the record, not just every ground mentioned in the abatement order. They fail to do so.

"Mandamus is an 'extraordinary' remedy that is 'available only in limited circumstances' ... 'to correct a clear abuse of discretion.'" *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). "Mandamus … will issue only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus relief has no adequate remedy by appeal." *In re Aleman*, No. 15-25-00099-CV, 2025 WL 1710793, at *1 (Tex. App.—15th Dist. June 19, 2025, orig. proceeding) (per curiam) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004)).

A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Mandamus is appropriate only when this Court determines that the district court "could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable." *In re Sting Soccer Group, LP*, No. 05-17-00317-CV, 2017 WL 5897454, at *5 (Tex. App.—Dallas Nov. 30, 2017, orig. proceeding) (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding)).

"[A]n appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion, even if the mandamus court would have decided the issue differently." *Id.* (citing *State Farm Lloyds*, 520 S.W.3d at 604). Vacating an abatement order on mandamus, therefore, is only appropriate to correct a clearly "arbitrary and unreasonable" decision made by the trial court—*i.e.*, when it "could reasonably have reached only one decision," and did not. *Walker*, 827 S.W.2d at 840; *see In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

## B. The trial court did not abuse its broad discretion in finding DAF HoldCo is a necessary party.

The Dondero Organizations do not overcome the heavy burden to demonstrate entitlement to mandamus relief—i.e., they cannot show that the trial court was left with "only one conclusion" on whether abatement was warranted. *Sting Soccer*, 2017 WL 5897454 at *5.

Under Rule 39(a), for a just adjudication, a party shall "be joined as a party" if:

> (1) in his absence complete relief cannot be accorded among those already parties, or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may

> (i) as a practical matter impair or impede his ability to protect that interest or

> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest....

TEX. R. CIV. P. 39(a). If a necessary party has not been joined, a court "shall order" it to be made a party. TEX. R. CIV. P. 39(a)(2)(ii). The proper procedure is to abate the case until the necessary party has been joined. *Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 180 (Tex. App.—San Antonio 2008, pet. denied).

"Although Rule 39 provides for joinder in mandatory terms, 'there is no arbitrary standard or precise formula for determining whether a particular person falls within its provision.'" *Brown v. Snider Indus., LLP*, 528 S.W.3d 620, 625 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200, 204 (Tex. 1974)). Instead, "[t]rial courts have broad discretion in matters involving joinder of parties." *Pierce v. Blalack*, 535 S.W.3d 35, 41 (Tex. App.—Texarkana 2017, no pet.); *see also Conrad Const. Co., Ltd v. Freedmen's Town Preservation Coalition*, 491 S.W.3d 12, 16 (Tex. App.—

Houston [14th Dist.] 2016). This Court "review[s] a trial court's rulings on issues concerning joinder for an abuse of discretion." *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017).

The Dondero Organizations cite a San Antonio Court of Appeals case to argue its "pleadings must be taken as true at this stage." Petition p. 41 (citing *Doty v. Davidson*, No. 04-20-00583-CV, 2022 WL 2334547, at *5 (Tex. App.—San Antonio June 29, 2022, pet. denied)). *Doty* concerned capacity and standing, rather than joinder—the Dondero Orginizations misstate the law vis-à-vis joinder. Indeed, courts consistently hold that a determination under Rule 39 is evidentiary. *See e.g.*, *Crawford*, 509 S.W.3d at 913 (noting evidence of an actual claimed interest in the lawsuit's subject matter was required to support a finding that a party was necessary under Rule 39(a)(2)). And because the determination whether parties are necessary under Rule 39 is "an evidentiary issue for the trial court," a party seeking mandamus relief must show that "the evidence before the trial court dictated only one possible outcome as a matter of law." *In re Occidental West Texas Overthrust, Inc.*, 626 S.W.3d 395 (2021).

The Dondero Organizations ignore the evidentiary nature of a joinder decision in an attempt to cast the trial court's decision as a non-discretionary interpretation of law. *See* Petition pp. 22-24. In support, the Dondero Organizations cite *In re Austin Hous. Fin. Corp.,* No. 03-22-00091-CV, 2022 WL 2960796 (Tex. App.—Austin July 27, 2022, orig. proceeding) (mem. op.). Petition p. 23. But *Austin* does not stand for the proposition that a trial court lacks broad discretion in decisions of joinder. Instead, *Austin* merely demonstrates that a court lacks discretion to find joinder of a party mandatory under Rule 39 where no evidence in the record supports that decision. 2022 WL 2960796 at *3-4. There, a party sought abatement on the grounds that non-parties claimed an interest in the subject of the action. *Id.* at *2. The party seeking abatement therefore was required to "show through 'record evidence' that each of the alleged necessary parties had an actual, claimed interest—not just a potential interest—in the [real property that was the] subject matter of the action." *Id.* (citing *Crawford*, 509 S.W.3d at 913). But the evidence was only a single plat map that "at most … suggest[ed] that the other lot owners may potentially claim an interest in the subject of th[e] action." *Id.* at *3.

The Dondero Organizations do not argue the evidence presented in the trial court, including corporate governance documents and pleadings in the Cayman Proceeding, was insufficient to support abatement. That is because it was.

The evidence in this record demonstrates the Dondero Organizations allege an injury that they do not own. The $270 million in allegedly stolen assets belong to the Fund. MR0010. DAF HoldCo is the limited partner of the Fund. MR0058; MR1788. The Dondero Organizations own only Participating Shares in DAF HoldCo. MR0015; MR0155-56. The Participating Shares confer no right to control any action or decision of DAF HoldCo. MR0084. Nor can the Dondero Organizations redeem their shares. MR0080. Instead, the Participating Shares entitle the Dondero Organizations to distributions made at the sole discretion of DAF HoldCo's Control Person MR0096. In that vein, there is no limitation on the number of organizations that could own Participating Shares in DAF HoldCo, and the Control Position can change the benefiting organizations with no input from or notice to the Dondero Organizations. MR0082; MR0086-87. The Dondero Organizations, as mere holders of Participating Shares, had no right to

control DAF HoldCo in any way, only "rights in a winding-up or repayment of capital" or to participate in the profits. MR0084.

The evidence in this record also shows that the relief requested by the Dondero Organizations cannot be provided without DAF HoldCo—a separate ground under the joinder rules that the Dondero Organizations ignore. The Dondero Organizations ask for relief that includes enjoining the Charitable DAF from disposing of, transferring, encumbering, or dissipating any "Charitable DAF Fund and DAF HoldCo assets" and ordering the Charitable DAF to reverse prior actions. MR0043; MR0436. But as the evidence demonstrates, only DAF HoldCo has the authority to take these actions. MR0066; MR0071-104; MR0252-54.

As discussed in greater detail below, the evidence in this record gives ample support to determinations that the Dondero Organizations' claims are derivative and that the trial court could not grant complete relief without DAF HoldCo.

**1. The Dondero Organizations fail to address every basis for abatement under the trial court record; so the Court should deny mandamus without going further.**

In the trial court, the Charitable DAF argued DAF HoldCo is a necessary party warranting abatement under Rule 39(a) for each of the following, independent reasons:

1. The Dondero Organization's claims are derivative, making DAF HoldCo a necessary party under Rule 39(a)(1), MR1138;

2. The Dondero Organizations pray for relief that can only be afforded to them by DAF HoldCo, making DAF HoldCo a necessary party under Rule 39(a)(1), MR1138;

3. DAF HoldCo claims an interest and is situated such that disposition of this action without it as a practical matter impairs or impedes its ability to protect that interest, making DAF HoldCo a necessary party under Rule 39(a)(2)(i), MR1140; and

4. DAF HoldCo's absence leaves the Defendants who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations, MR1140, *see* Rule 39(a)(2)(ii).

The Petition only addresses the first two grounds listed above. But the other two grounds are independently sufficient to support abatement. *See e.g., Longoria*, 255 S.W.3d at 180 (approving of trial court's abatement and later dismissal based on failure to join party necessary under Rule 39(a)(2)). And any additional ground supported by

the record is sufficient to deny mandamus. *See In re Travelers Prop. Casualty Co. of America,* 485 S.W.3d at 925.

The Dondero Organizations attempt to dodge this mandamus maxim by claiming to divine, and cabin, the trial court's ruling on abatement to *one* basis only. Petition p. 23 ("Since the trial court gave a clear, narrow, and defined legal basis for the abatement, based on a discrete construction of Cayman law, the abatement order is an abuse of discretion if the trial court's construction of Cayman law as applied to the Charities' claims is wrong."). They cite no authority to support this statement—a mischaracterization of both the trial court's ruling and the high standard to obtain mandamus relief. And this is the improper foundation on which the Dondero Organizations' entire mandamus argument is built.

Because the appellate court must uphold an order on mandamus "on any grounds supported by the record before the trial court," failure to argue abatement under Rule 39(a)(2) warrants denial of the Petition. *In re Travelers Prop. Casualty Co. of America,* 485 S.W.3d at 925; *seeIn re TCW Project Fund II, Ltd.,* 274 S.W.3d 166, 171 (Tex. App.— Houston [14th Dist.] 2008, orig. proceeding) (holding that relators

waived an argument by not briefing the argument in their mandamus petition). This Court need not go further.

### 2. The trial court had discretion to determine DAF HoldCo is a necessary party under Rule 39(a)(1).

#### a. The trial court correctly characterized the Dondero Organizations' claims as derivative.

Even if the Court were limited to the reasoning articulated in response to the Dondero Organizations' motion for reconsideration, the trial court did not abuse its discretion. Where a shareholder brings derivative claims, the underlying company is a necessary party that must be joined under Rule 39. *See Lee v. Ty Equity Grp., Inc.*, No. CIV. A. 3:01-CV-0253, 2001 WL 1401395, at *2 (N.D. Tex. Nov. 8, 2001) (non-party must be joined as necessary where claims of "breach of fiduciary duty clearly are derivative claims").[6] When determining under Cayman law whether a claim is derivative, "[t]he governing standard involves two questions: 'Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of

---

[6] Texas's joinder rule, TEX. R. CIV. P. 39, is modeled almost verbatim after FED. R. CIV. P. 19; so Texas state courts consider the opinions of federal courts in Texas as persuasive authority in interpreting those rules. *See, e.g.*, *Royal Petroleum Corp. v. Dennis*, 332 S.W.2d 313, 317 (Tex. 1960).

the recovery or other remedy?'" *In re Harbinger Capital Partners Funds Investor Litigation,* 2013 WL 7121186 at *7 (S.D.N.Y. Dec. 16, 2013).

The trial court properly determined that the Dondero Organizations' claims are derivative. All causes of action the Dondero Organizations pleaded stem from their allegations that the Charitable DAF converted $270 million in assets belonging to *DAF HoldCo*[7] and thereby diluted the value of the Dondero Organizations' participating *shares* in DAF HoldCo. MR0420-27. The Dondero Organizations even admit they "alleged essentially the same facts … before the Grand Court" in the Caymans in seeking liquidation of DAF HoldCo. MR0419. *DAF HoldCo* sustained the alleged injury. The Dondero Organizations' injury is simply a reduction in the value of their shares in DAF HoldCo.

Similarly, the Dondero Organizations, as alleged "beneficial owners of [DAF HoldCo]," are not entitled to personally recover DAF HoldCo's allegedly lost assets, regardless of the implications to the value of their participating shares. MR0389.

---

[7] While this allegation alone demonstrates the derivative nature of the Dondero Organizations' claims, it is worth noting that, in reality, the assets the Dondero Organizations seek to obtain in this litigation belong to the Fund, not DAF HoldCo. MR0020. So the Dondero Organizations attempt to disregard two levels of removal from ownership of the assets they seek.

The Dondero Organizations argue that *Tianrui*[8] compels the determination that its claims are not derivative. In *Tianrui*, the Cayman Islands Privy Council held that in certain circumstances, a shareholder may bring a direct claim against its company. The Dondero Organizations argue that the trial court's interpretation in denying the Motion for Reconsideration incorrectly limits *Tianrui's* holding to owners of shares with voting rights. But their argument ignores the underlying facts and depends on quotes taken out of context.

*Tianrui* involved a claim brought by a shareholder, Tianrui (International) Holding Company Ltd ("Tianrui"), against China Shanshui Cement Group Ltd., ("CSCGL") a Cayman Islands exempted company in which it held voting shares. *Tianrui*, [2024] UKPC 36, ¶¶ 6, 16. Tianrui initially held 28% of the voting shares in CSCGL, the most of any shareholder. *Id.* at ¶ 7. Its percentage of shares allowed it to block special resolutions. *Id.* at ¶¶ 16, 18. Tianrui alleged CSCGL's board of directors, in collusion with lesser shareholders, issued over one million new shares for the "improper purposes of enabling [the lesser

_____

[8] *Tianrui (Int'l) Holding Co. Ltd. v. China Shanshui Cement Grp. Ltd.,* [2024] UKPC 36.

shareholders] by themselves or with others to control [CSCGL.]" *Id.* at ¶ 18. After the dilution, Tianrui's voting shares were reduced to a level that removed its control over CSCGL and particularly its ability to block special resolutions. *Id.*

The Cayman court determined under Tianrui's allegations it had personal standing to bring a claim against CSCGL. *Id.* at ¶ 4. Important to the court's decision was that Tianrui's claim was over "an allotment and issue of shares which is deliberately aimed at altering *the balance of power* between shareholders, so as to advance the power of one (or one group) at the expense of another." *Id.* at ¶ 71. (emphasis added). Specifically, Tianrui complained of their loss of their voting power—an injury not shared or owned by CSCGL as a whole. *Id.*

The *Tianrui* court also noted that in certain circumstances, a shareholder's ability to make a personal claim against a company may be destroyed, before or after the case is filed, by ratification. *Id.* at ¶ 82. For example, where an action of the board of directors is ratified at a general meeting unanimously, the shareholder loses its ability to make a personal claim. *See id.* at ¶ 80.

Two major distinctions exist between *Tianrui* and the Dondero Organizations' case. First, the Dondero Organizations' Participating Shares are non-voting, with no right to control whatsoever. The Dondero Organizations argue that voting rights are not the only form of power a shareholder might have, and *Tianrui* therefore mandates that they have direct claims. But the Dondero Organizations do not identify any source of "power" conferred by the Participating Shares, merely limited economic rights. Indeed, as apparent from the face of the governing documents attached to the Dondero Organizations' pleadings, the Participating Shares confer none:

> "Participating Share" means a non-voting, participating, non-redeemable share in the capital of the Company of $0.01 nominal or par value issued subject to and in accordance with the provisions of the Act and these Articles, and having the rights and being subject to the restrictions as provided for under these Articles with respect to such Share. All references to "Participating Shares" herein shall be deemed to be Participating Shares of any or all Classes or Series as the context may require. For the avoidance of doubt, in these Articles the expression "Participating Share" shall include a fraction of a Participating Share.

MR0080.

As holders of mere Participating Shares, the Dondero Organizations held "no right to receive notice of, to attend, to speak at nor to vote at general meetings of [DAF HoldCo]." MR0084. Instead, those rights were vested solely in holders of Management Shares.

MR0083. And all rights to manage DAF HoldCo (prior to the Cayman Proceeding) were held by the Directors. MR0091

Unlike the shareholder in *Tianrui*, the Dondero Organizations are not complaining about a loss of power over DAF HoldCo conferred on them by virtue of their Participating Shares. Because the Participating Shares conferred no power on the Dondero Organizations, nothing the Defendants allegedly did could have "improperly shift[ed] the balance of power" as argued in the Mandamus Petition. Instead, the Dondero Organizations allege in all of their causes of action a dilution in the economic value of their shares resulting from the purported theft of assets allegedly belonging to DAF HoldCo.

The second major difference is that the shareholder in *Tianrui* filed its lawsuit *against the company in which it owned shares*. To be analogous here, the Dondero Organizations would need to sue the company in which they own their Participating Shares, *i.e.*, DAF HoldCo. So even if the Participating Shares did confer the type of "power" necessary to support a shareholder's direct claim under *Tianrui*, DAF HoldCo is still a necessary party, and the Dondero Organizations continue to inexplicably refuse to add DAF HoldCo as a party. *Tianrui*

does not relieve a shareholder from involving the company in its lawsuit about actions taken on behalf of the company.

The other cases cited by the Dondero Organizations in support of the argument that they have direct claims are likewise unavailing. Citing the *Feiner*[9] case, the Dondero Organizations claim Cayman law provides them, as shareholders, a direct claim for breach of fiduciary duty against the Defendants "in circumstances like those pled here." Petition p. 32.

But the direct-fiduciary-duty "circumstances" are not present here. The Dondero Organizations overlook that *Feiner* and the Cayman case relies on state that any fiduciary duty a director owes a shareholder—including the duty of disclosure—must arise *outside* of the director's and shareholder's relationship to the company. *Feiner Family Tr.*, 2007 WL 2615448, at *7 ("[A] director does not owe any fiduciary duties to minority shareholders solely based on his or her relationship to the company."); *Peskin v. Anderson*, [2001] 1 B.C.L.C. 372 ¶ 29 ("The directors of a company are not trustees for individual shareholders and

---

[9] *Feiner Family Trust v. VBI Corp.*, No. 07 Civ.1914, 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007).

may purchase their shares without disclosing pending negotiations for the sale of the company's undertaking."). Instead, a separate duty owed from a director to a shareholder would need to arise out of events bringing "the directors of the company into direct and close contact with the shareholders in a manner capable of generating fiduciary obligations." *Feiner*, 2007 WL 2615448, at *7 (citation modified). The example given by *Feiner* is where "the directors of a company mak[e] direct approaches to … the shareholders in relation to a specific transaction and hold[] themselves out as agents for them" and engage in misconduct in such a role. *Id.* (quoting *Peskin*, ¶ 34).

The Dondero Organizations do not allege and cannot allege such direct and close contact or any other circumstances that give rise to a direct fiduciary duty between the Charitable DAF and the Dondero Organizations that give rise to direct-fiduciary-duty claims. Instead, they allege that Patrick, as the Control Person of DAF HoldCo, took assets that they allege belonged to *DAF HoldCo* without telling the Dondero Organizations. The Dondero Organizations do not allege their Participating Shares gave them any right to be informed of or control any of DAF HoldCo's financial dealings, nor do they allege Patrick

engaged in any close or special dealings with them apart from the typical relationship between a director and a holder of non-voting shares.

Ultimately, taking the Dondero Organizations' pleadings as true (despite no obligation to do so), the answers to the key questions, "[w]ho suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy," both point to DAF HoldCo. *Harbinger,* 2013 WL 7121186, at *7. The trial court was therefore well within its broad discretion to find that at least some (if not all) of the Dondero Organizations' claims are derivative. And because the joinder analysis under Rule 39 applies to the "action" as a whole, the presence of even one derivative claim gave the trial court discretion to determine DAF HoldCo is a necessary party. *See* TEX. R. CIV. P. 39(a).

> **b. The trial court also had discretion to determine that DAF HoldCo is a necessary party under Rule 39(a)(1) because complete relief cannot be afforded by the current defendants.**

Even if their claims are not derivative, the Dondero Organizations pray for relief that can only be afforded by DAF HoldCo, meaning the trial court cannot afford complete relief to the current parties without DAF HoldCo.

The Dondero Organizations argued in their Motion for Reconsideration that the trial court misunderstood Rule 39(a)(1) and ordered abatement based on the ability to afford complete relief to a DAF HoldCo, a non-party. This argument ignores their own requested relief. The Dondero Organizations asked the trial court to "[e]njoin Defendants from further disposing of, transferring, encumbering, or dissipating any Charitable DAF Fund and DAF HoldCo assets." MR0435. Only DAF HoldCo has (or had) authority under its governance documents to dispose of and transfer the assets of the Charitable DAF as contemplated by this request. MR0066; MR0071-104. Yet the Dondero Organizations exclude DAF HoldCo, the party *most* necessary to allow the relief sought by the Dondero Organizations. *See Ring & Ring v. Sharpstown Mall Tex., LLC*, No. 01-16-00341-CV, 2017 WL 3140121, at *11 (Tex. App.—Houston [1st Dist.] July 25, 2017, no pet.).

The Dondero Organizations also seek "the reversal of the dilution scheme and unauthorized asset transfers" and "recission of improper redemption of shares and share transfers[.]" MR0436. Again, these actions can *only* be carried out by DAF HoldCo. MR0066; MR0071-104. The Dondero Organizations have Participation Shares in only one entity,

DAF HoldCo. MR0015. This interest arises out of DAF HoldCo's Articles of Association, and no Defendants currently party to this lawsuit can provide complete relief. *See Matter of Tr. A & Tr. C. Established Under Bernard L. & Jeannette Fenenbock Living Tr. Agreement, Dated March 12, 2008*, 690 S.W.3d 80, 88 (Tex. 2024) (explaining that for non-parties, the court "could not require them to transfer the shares back" if they were not joined). Ordering Defendants to return shares they do "not own or have any control over" is not just improper, it is *impossible. See id.* at 88, 92 (court abuses its discretion by ordering restoration of shares by a defendant who "does not own or control the shares[,] and those who do are not parties."). Because DAF HoldCo is needed in this lawsuit to afford the complete relief sought by the Dondero Organizations, the trial court had ample discretion to determine it, through the JOLs, must be joined under Rule 39(a)(1).

### c. The trial court also had discretion to find DAF HoldCo is a necessary party under Rule 39(a)(2).

DAF HoldCo claims an interest and is situated such that disposition of this action without it "as a practical matter impair[s] or impede[s] [its] ability to protect that interest." TEX. R. CIV. P. 39(a)(2)(i). DAF HoldCo's absence also leaves the Defendants who are "already

parties subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *Id.* 39(a)(2)(ii).

As noted above, the Dondero Organizations do not argue against these grounds. Instead, they focus entirely on Rule 39(a)(1). But an appellate court must uphold an order "on any grounds supported by the record before the trial court." *In re Travelers*, 485 S.W.3d at 925.

Under Subsection (a)(2)(ii), proceeding without DAF HoldCo risks multiple, inconsistent obligations given the sheer number of fora where the Dondero Organizations are litigating these same claims. The Dondero Organizations ask for relief in this Court even though they, or their related parties, instituted involuntary liquidation of DAF HoldCo in the Caymans, resulting in a Chapter 15 petition in Delaware seeking recognition of the foreign proceeding. MR0725. The Dondero Organizations' claims in this case substantially overlap with the claims in the Caymans—a fact that they admit (MR0028)—increasing the risk that all parties will be subject to conflicting judgments regarding their interests. *Cf. Munters Corp. v. Locher*, 936 S.W.2d 494, 498 (Tex. App.—Houston [14th Dist.] 1997, writ denied) ("The principal function of bankruptcy law is to determine and implement in a single collective

proceeding the entitlements of all concerned parties."). And given the Dondero Organizations do not specify whether their claims against Patrick are brought in his individual or official capacity, he is uniquely at risk of conflicting judgments. *See Long v. Lopez*, 115 S.W.3d 221, 227 (Tex. App.—Fort Worth 2003, no pet.).

Proceeding without DAF HoldCo also impairs its ability to defend its interests here, which makes its joinder necessary under Subsection (a)(2)(i). As explained above ad nauseum, DAF HoldCo is the only owner of the claims in this lawsuit. *See Longoria*, 255 S.W.3d at 182 (even if the absent party no longer has title to or possession of the assets in dispute, they still have an interest in the lawsuit). And by filing the Chapter 15 petition for recognition, DAF HoldCo "has an *actual, claimed interest—* not just a potential interest—in the subject matter of the action." *See In re Occidental W. Tex. Overthrust, Inc.*, 626 S.W.3d 395, 401 (Tex. App.— El Paso 2021, no pet.) (citing *Crawford*, 509 S.W.3d at 913); *Henderson v. Gordon*, No. 01-16-01007-CV, 2018 WL 3848777, at \*6 (Tex. App.— Houston [1st Dist.] Aug. 14, 2018, no pet.) (quoting *Claim*, WEBSTER'S THIRD NEW INT'L DICTIONARY (2002)) ("'claim' means 'to *demand*

*recognition* of (as a title, distinction, possession, or power) esp. as a right'") (emphasis added).

Specifically, DAF HoldCo has an interest in the subject matter of action because the Dondero Organizations request a constructive trust and a court-appointed receivership targeting the Charitable DAF's assets. Imposing a constructive trust over Patrick, CDMCFAD, LLC, and DFW Charitable Foundation, solely in favor of the Dondero Organizations, impairs DAF HoldCo's ability to protect its interests. *See In re Indep. Fuel Sys. LLC*, 655 B.R. 322, 328 (Bankr. E.D. Tex. 2023) (before a plaintiff "can obtain a constructive trust, it must establish that the [assets] are owned by Defendant," so non-parties with an interest in those assets must be joined as necessary parties); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 88 (Tex. 2015) (finding error when a court grants a constructive trust for assets not definitively traceable as owed to the specific claimant, since that impairs the interests of non-parties).

The Dondero Organizations' receivership request also has a joinder problem under Rule 39(a)(2)(i). DAF HoldCo is "a necessary and indispensable party" when a receivership will "affect[] its properties." *See*

*Associated Bankers Credit Co. v. Meis*, 456 S.W.2d 744, 747 (Tex. App.—Corpus Christi 1970, no writ).

By the facts as alleged in the Dondero Organizations' pleadings, only DAF HoldCo, not the Dondero Organizations, had *any* property interest in the assets the Dondero Organizations propose placing under receivership, namely the "$270 million in assets" they themselves allege belong to DAF HoldCo. MR0428; MR0429-31. And as shown by the Cayman pleadings, DAF HoldCo, through the JOLs, currently makes an unambiguous, non-theoretical legal claim to these assets in the Cayman Proceeding. MR0605-12; MR0677-78. These are not the Dondero Organizations' assets, and never were, since the Dondero Organizations' Participation Shares entitle them only to discretionary distributions, not an equity share of the entire Charitable DAF. MR0080; MR0082-84; MR0360. Thus DAF HoldCo also must be joined because under Rule 39(a)(2)(i) "all persons or entities *over whose properties a receiver is appointed* are necessary parties." *See Assoc. Bankers Credit Co.*, 456 S.W.2d at 747 (emphasis added). The Dondero Organizations make no argument that abatement on this ground is not supported by the record before the trial court.

**C.** **The trial court acted within its broad discretion in abating this case.**

As described above, the trial court had ample discretion to determine that DAF HoldCo, through the JOLs, is a necessary party under multiple, independent grounds pursuant to both Rule 39(a)(1) and Rule 39(a)(2). Citing a case where no party sought or argued mandatory joinder under Rule 39, the Dondero Organizations argue that abatement is an abuse of discretion because they "are the masters of their suit regarding the claims and parties they choose to pursue." Mandamus Petition pp. 51-52 (quoting *Heard v. Moore,* 101 S.W. 3d 726, 728 (Tex. App.—Texarkana 2003, pet. denied)). But looking at cases actually addressing Rule 39, it is clear and uncontroversial that "[a]batement of an action is proper," and thus well within a court's discretion, when a necessary party is absent. *See, e.g., April Sound Mgmt. Corp. v. Concerned Property Owners for April Sound, Inc.,* 153 S.W. 3d 519, 524 (Tex. App.—Amarillo 2004, no pet.); *see also Brown,* 528 S.W.3d at 624 ("A motion to abate is the proper procedural tool used to raise an issue of a defect in the parties."). Because a necessary party was not joined, the trial court did not abuse its discretion by applying the proper remedy and abating the case. *See Longoria,* 255 S.W.3d at 180.

**D.** **Why do the Dondero Organizations refuse to add DAF HoldCo as a party?**

Left unanswered is the Dondero Organizations' decision to not take the easy path—doing what the trial court ordered and adding DAF HoldCo as a party—and to instead spend the parties' resources, and this Court's time, on the Petition. Surely it's not the filing fee of $137. *See* Supreme Court of Texas Misc. Docket No. 24-9047. Reading between the lines in the Petition, it appears the answer is "because we don't think we have to." Throughout Relators' Petition, they complain of the effects of the abatement, not about how joinder of DAF HoldCo would adversely affect the ongoing litigation of the case. But Relators have had it within their power to eliminate any prejudice from the abatement simply by joining DAF HoldCo, as the trial court's order requires. They therefore are not entitled to mandamus to secure the very relief they could effect on their own.

Dondero's litigation tactics are well-documented in published opinion after published opinion, where he's been called "transparently vexatious" and "litigious." *Dondero v. Jernigan*, No. 24-10287, 2025 WL 1122466, at *5 (5th Cir. Apr. 16, 2025) ("And there is ample evidence in the record to support these comments"). While the Dondero

Organizations unquestionably lose on the merits of their extraordinary request for mandamus relief—which is based on a gross mischaracterization of Judge Whitehill's order on reconsideration—their arguments and their threshold decision to pursue mandamus rather than obey Judge Whitehill's orders exist in the context of Dondero's documented history of "transparently vexatious" litigation. *Dondero*, 2025 WL 1122466, at *5.

## PRAYER

For the reasons stated above, Defendants respectfully request that this Court deny the Dondero Organization' petition of writ of mandamus.

Respectfully submitted,

/s/ *Brian P. Shaw*
**Brian P. Shaw**
  Texas Bar No. 24053473
  Email: bshaw@ccsb.com
**Kenneth Carroll**
  Texas Bar No. 03888500
  Email: kcarroll@ccsb.com
**Monica E. Gaudioso**
  Texas Bar No. 24084570
  Email: mgaudioso@ccsb.com
**Andrea C. Reed**
  Texas Bar No. 24121791
  Email: areed@ccsb.com
**Emily H. Owen**
  Texas Bar No. 24116865
  Email: eowen@ccsb.com
**CARRINGTON, COLEMAN,**
**SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000 – Telephone
(214) 580-2641 – Facsimile

**ATTORNEYS FOR REAL**
**PARTIES IN INTEREST**

## RULE 52.3(J) CERTIFICATION

The undersigned certifies that he has reviewed the foregoing Response and concluded that every factual statement in the Response is supported by competent evidence included in the appendix and mandamus record.

*/s/ Brian P. Shaw*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Tex. R. App. P. 9.4(i)(3) that this document complies with the length limitations of Rule 9.4(i) and the typeface requirements of Rule 9.4(e). Exclusive of the contents identified by Rule 9.4(i)(1) and inclusive of all textboxes, footnotes, and endnotes, this document contains 6,575 words as counted by the Word Count function of Microsoft Word. This document has been prepared in proportionally spaced typeface using:

Software Name and Version: Microsoft Word for Microsoft 365

Typeface Name: Century Schoolbook

Font Size: 14-point in text; 12-point in footnotes

*/s/ Brian P. Shaw*

# CERTIFICATE OF SERVICE

I certify that on January 2, 2026, a true and correct copy of this Response to Petition for Writ of Mandamus was served by electronic case filing or e-mail or certified mail to the following counsel and parties:

The Honorable William Whitehill
BCDivision1B@txcourts.gov
Texas Business Court, First Division
8080 Park Ln Ste 500
Dallas, Texas 75231

*Respondent*

**MCCARTY LAW PLLC**
Darren L. McCarty
State Bar No. 24007631
darren@mccartylawpllc.com
316 West 12th Street, Suite 400
Austin, Texas 78701
512-827-2902

**DUANE MORRIS LLP**
Craig M. Warner
State Bar No. 24084158
cmwarner@duanemorris.com
Joseph M. Cox
State Bar No. 04950200
jmcox@duanemorris.com
Benjamin L. Warden
State Bar No. 24115926
bwarden@duanemorris.com
200 Crescent Court, Suite 900
Dallas, Texas 75201
(214) 257-7213 -Telephone

*Counsel for Relators*

_/s/ Brian P. Shaw_

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Brian Shaw on behalf of Brian Shaw
Bar No. 24053473
bshaw@ccsb.com
Envelope ID: 109618304
Filing Code Description: Response
Filing Description: RESPONSE TO PETITION FOR WRIT OF MANDAMUS
Status as of 1/2/2026 4:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Brian Shaw | 24053473 | bshaw@ccsb.com | 1/2/2026 4:44:43 PM | SENT |
| Brian Shaw | 24053473 | bshaw@ccsb.com | 1/2/2026 4:44:43 PM | SENT |
| Brian Shaw | 24053473 | bshaw@ccsb.com | 1/2/2026 4:44:43 PM | SENT |
| Brian Shaw | 24053473 | bshaw@ccsb.com | 1/2/2026 4:44:43 PM | SENT |
| Dylan JAnderson | | DJAnderson@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Dylan JAnderson | | DJAnderson@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Dylan JAnderson | | DJAnderson@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Joseph MCox | | JMCox@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Joseph MCox | | JMCox@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Joseph MCox | | JMCox@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Benjamin Warden | | BWarden@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Benjamin Warden | | BWarden@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Benjamin Warden | | BWarden@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Elizabeth Perez | | eperez@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Elizabeth Perez | | eperez@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Elizabeth Perez | | eperez@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Craig M.Warner | | CMWarner@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Craig M.Warner | | CMWarner@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| Craig M.Warner | | CMWarner@duanemorris.com | 1/2/2026 4:44:43 PM | SENT |
| The Honorable William Whitehill | | BCdivision1b@txcourts.gov | 1/2/2026 4:44:43 PM | SENT |
| Darren McCarty | | darren@mccartylawpllc.com | 1/2/2026 4:44:43 PM | SENT |
| Darren McCarty | | darren@mccartylawpllc.com | 1/2/2026 4:44:43 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Brian Shaw on behalf of Brian Shaw
Bar No. 24053473
bshaw@ccsb.com
Envelope ID: 109618304
Filing Code Description: Response
Filing Description: RESPONSE TO PETITION FOR WRIT OF MANDAMUS
Status as of 1/2/2026 4:53 PM CST

Case Contacts

| Darren McCarty | | darren@mccartylawpllc.com | 1/2/2026 4:44:43 PM | SENT |
|---|---|---|---|---|
| Darren McCarty | | darren@mccartylawpllc.com | 1/2/2026 4:44:43 PM | SENT |